STOHER v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

1. **Negligence**: RAILROAD: CONSTRUCTION OF ROADBED. Whether proper care has been used in the construction of a railroad is, in general, a question of fact, and the sudden giving away of part of its structure is, if unexplained, some evidence of negligence *in its* construction.

2. ———: ———: ———. A railroad company is bound to use reasonable care in constructing and maintaining its track and roadbed in such condition as to make the same reasonably secure for the use of passengers and employes, and it is bound to use like care in providing sufficient culverts for the escape of water collected and accumulated by its embankments and excavations.

3. **Railroad**: DEFECTIVE ROADBED: EVIDENCE. It is ordinarily sufficient, in an action against a railroad for negligence in not so maintaining its roadbed in a reasonably safe condition, to show a state of facts tending to show negligence at the time of the accident, or recently before or after it, and within such reasonable time as will, from the nature and circumstances of the case, induce or justify a reasonable presumption or inference that the condition of the bed is unchanged.

4. ———: ———. Evidence as to the condition of the roadbed, one, two, and three years after the accident, is too remote.

5. **Instruction**: ASSUMING FACTS. An instruction should not assume material facts in issue.

6. **Action by Infant for Death of Parent**: ESTIMATING DAMAGES: JURY. In an action by an infant, for the death of its parent caused by the defendant's negligence, the jury is not con-

fined in estimating the damages to any exact mathematical calculation, but is vested with considerable discretion with which the courts will not interfere, unless it has been abused.

7.  ———— : ————. The loss by a child of a parent's care in its education, maintenance, and pecuniary support, has a pecuniary, as well as a moral value, and the verdict cannot, therefore, be limited to nominal damages, because the evidence fails to show the amount of the earnings of the parent.

8.  ———— : ———— : AGGRAVATING CIRCUMSTANCES. The jury should not be instructed to consider, in estimating the damages, the aggravating circumstances they should find in the case, it not being one warranting vindictive or exemplary damages.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Bennett Pike* for appellant.

(1) Plaintiff's own testimony did not make a *prima facie* case, and the demurrer to the evidence should have been sustained. Wood on Master and Servant, secs. 368, 419 ; *Huffman v. Railroad*, 78 Mo. 54. (2) The court committed error in the admission of testimony offered by plaintiff, against the objection of defendant. 1 Greenl. on Evid., sec. 52, p. 440, note 4 ; *Hudson v. Railroad*, 59 Ia. 581 ; 2 Starkie on Evidence, 381 ; *Hubbard v. Railroad*, 39 Me. 506 ; *Aldrich v. Pelham*, 1 Gray, 510 ; *Kidder v. Dunstable*, 11 Gray, 344 ; *Parker v. Portland Publishing Co.*, 69 Me. 173. (3) The court refused to admit proper and legal testimony offered by defendant. *Railroad v. Fowler*, 56 Tex. 452. (4) The court committed error in giving the instructions asked by plaintiff. *Belt v. Goode*, 31 Mo. 128 ; *Bradford v. Pearson*, 12 Mo. 71 ; *Quinlivan v. English*, 44 Mo. 46 ; *Georges v. Hufschmidt*, 44 Mo. 179 ; *Doehling v. Loos*, 45 Mo. 150 ; *Winters v. Railroad*, 39 Mo. 468 ; *Ewing v. Goss*, 41 Mo. 492. (5) The court erred in refusing to give instructions numbered one, two, three, and four, asked by defendant. *Railroad v. Sulphur Springs*, 1

Stoher v. The St. Louis, Iron Mountain & Southern Ry. Co.

S. D., 6 P. F. S., 445; 2 Am. and Eng. R. R. cases, 170. (6) The court erred in giving instructions numbered one, two, three, four, and five, on its own motion, and in instructing the jury, orally, during the progress of the trial. *Fitzgerald v. Hayward*, 50 Mo. 516; *Goetz v. Railroad*, 50 Mo. 482; *Railroad v. Arnold*, 10 Am. and Eng. R. R. Cases, 219; Pierce on Railroads, 367, and cases cited.

No brief for respondent.

RAY, J.—Bertha Stoher, an infant, brings this suit by her next friend in the circuit court of the city of St. Louis, to recover damages for the death of her father, Nicholas Stoher, who was killed by the derailment of a passenger train on the railroad of defendant, near Bismarck, Mo., whilst he was acting as fireman upon the engine then drawing said passenger train. Upon a trial of the cause, plaintiff had judgment for damages in the sum of five thousand dollars, from which the defendant appealed to the St. Louis court of appeals, where the judgment was affirmed, *pro forma*, from which the case was appealed to this court. None of the witnesses testifying in the cause seem to have been present when the cars were overturned and the father of the infant plaintiff killed. The railroad track at this place was "an embankment about a foot high, composed, mostly, of rock and gravel, and built on the solid rock." At a distance from the place of the accident, variously estimated by the witnesses at from six or seven hundred to one thousand feet, there was a culvert passing through the roadbed, designed and intended to carry off the water that fell and accumulated during rains in the basin situated on the eastern side of the railroad. This culvert was a double box culvert, each opening four feet by four, and together with the railroad had been constructed and in use for a number of years. During the night of May 9, 1880, there had been a rain storm, and the water

had accumulated in this basin, and so washed the railroad track and weakened the embankment, that the same gave way under the engine passing along there at about half past three o'clock at night, which said engine was thrown from the track and the said Nicholas Stoher, fireman as aforesaid, was then and there killed.

The petition, so far as material, sets forth the grounds of recovery, in substance, that said deceased was not guilty of any negligence that directly contributed to cause said injuries and his death, but that the same was wholly caused by the negligence of defendant and its agents, in failing to keep its track in repair and in a suitable condition for the passage of its engines and trains of cars along and over its said track; that, at the place where said engine was thrown from the track, said track was out of repair, and was in a defective and dangerous condition, and unsafe for the passage of engines and cars over the same; that said track, at said point, was so defectively and negligently constructed that it obstructed the natural flow and drain of water, and did not allow said water an outlet; that, by reason of said obstruction and want of outlet, from rain or other causes, the water would dam up and over said track, thus rendering the same defective, and unsuitable for the passage of engines and cars on said track; that, at the time said engine was thrown from said track, the water, by reason of the said defective structure and condition of said track, had accumulated against and upon said track, and washed the soil from said track, so that when said engine went upon that portion of said track it gave way, and said engine was thrown from the track and killed said Nicholas Stoher, as aforesaid, without fault upon his part; and the plaintiff, who is a minor of about the age of eleven months, was the only child of said Nicholas Stoher, at the time of his death; that no action for damages was ever begun by the widow of said Nicholas Stoher; that, by the statute, in such

cases provided, a cause of action has accrued to the plaintiff; that, by reason of the death of her father, the plaintiff was and is damaged in the sum of five thousand dollars, for which she demands judgment.

The answer of the defendant denied the allegations of the petition, except as therein afterwards admitted, and then set up that, on, and long prior to, said May 9, said Stoher had been a fireman in its employ, accustomed for several years to run on and over said portion of its railroad; that said track, prior to and up to the date of the accident, was well and skillfully built and constructed, and was in a state of good repair, as was well known to said Stoher; that, a few minutes prior to the accident, a sudden, violent, extraordinary, and unprecedented rain storm prevailed at and near the place of the accident, in and during which an amount of rain fell to an extent previously unknown in that part of the country, by reason of which, and of wood and stones thrown against it, the said track at the place or point where said Stoher was killed was moved and gave way, and not on account of any defect or want of strength to withstand all ordinary or usual rain storms or freshets occurring at said place; that said track was amply sufficient to withstand the flow or fall of water caused by ordinary and usual rain storms that could be reasonably expected to occur at said point, and had withstood all rainfalls occurring therewith for more than twenty years prior to the happening of said accident; that said Stoher and one Charles McPherson, who was the engineer of the locomotive upon which said Stoher was fireman, knew of the storm that prevailed, and was prevailing, at the time of the accident, by which said Stoher was killed, and that it was the duty of the said Stoher, and the said McPherson, to take all needful precautions against the effects of the same; that there was no time, after the falling of the rain aforesaid, and before the happen-

ing of the accident, for defendant's section men or track repairers, to go over and ascertain the condition of the said track, as Stoher and McPherson well knew, and that whatever negligence there was in running the engine and cars at said time and place, was their negligence, and that the injury and death of said Stoher was the direct result of his own negligence and that of his co-employe.

The evidence seems to be somewhat conflicting as to the extent and character of the rain storm during that night, and whether the same was extraordinary or merely severe and unusual, but such as had previously occurred in that region. So, we think, was the evidence as to the amount of the drainage basin and territory, for which the culvert in question was provided as the outlet, and, also, the evidence in respect to the condition of said culvert, and its sufficiency at that time to carry off the waters naturally collecting at that point during very severe and heavy rains. Whether proper care has been used in the construction of the railroad is, in general, a question of fact, and the sudden giving away of a part of the structure is, if unexplained, some evidence of negligence in its construction. Shearm. & Redf. on Neg., sec. 448. A railroad company is bound to use reasonable care in constructing and maintaining its track and roadbed in such condition as to make the same reasonably secure for the use of passengers and employes, and is bound to use like care in providing sufficient culverts for the escape of water collected and accumulated by its embankments and excavations. Shearm. & Redf. on Neg. [3 Ed.] sec. 444.

As to the alleged negligence of said engineer and fireman, set up in the answer, it is, perhaps, sufficient to say that no one, whether passenger or employe, on that train, testified as a witness in the cause, and that there is no proof in the record as to what their conduct, or that of either of them was, as to the running and

management of the said train, at that time. The witness Rowland, it is true, testified that, on the night of the storm and accident, he heard, at Bismarck, a conversation going on between the railroad men standing around the register in the office, McPherson among them; that McPherson said: "Boys, you want to look out for water, between here and Iron, and especially down there by Dent's, for it is very high." Dent's is about a mile and a half south of Bismarck, on the main line; that, as he was passing out of the office, he heard some one of the railroad men say to McPherson, according to his best recollection, "Charlie, you want to look out for high water, down there on that straight piece of track," referring, as his recollection is, to the water between Bismarck and Irondale.

Martin O'Moro, the freight train conductor, testified that he saw McPherson at Bismarck, and they were talking about the storm; that McPherson told him to look out for water on the track, between Bismarck and Iron Mountain (five miles south); that McPherson said the storm was very severe, and that the water was over the track, going down the hill, and that the water might wash out the track. But this witness also testified that he got into Bismarck, he thinks about three o'clock; that his train was the last one that passed over the track at the point of the accident, before McPherson's train, number two, attempted to pass over it; that his train, he thinks, had fourteen loaded cars; that the track, at the place of the accident, when he went over it seemed to be all right, in good condition.

At the most, this evidence could only justify an inquiry by the jury, as to the negligence, if any, on the part of said engineer and fireman, in proceeding on their journey with their said train. If these views and estimates of the evidence in the foregoing particulars be correct, the action of the trial court in refusing to give the instruction in the nature of a demurrer to the evidence, was right and proper.

Among other errors assigned by defendants, is the action of the court in receiving evidence as to the condition of the culvert in question and the track at that place long subsequent to the time of this occurrence when said Stoher was killed. There are several instances of this sort occurring in the evidence given by the witnesses, Denton and Poston, and objected to and exceptions taken by defendant at the time. This trial was begun on the twenty-sixth day of October, 1883, and the witness, Denton, upon being asked if any overflow of water had taken place at said place since the accident answered "yes, last spring"—that is, in the spring of '83. He was then permitted to describe this overflow, and the condition of the track thereafter. He further testified that after this subsequent overflow in '83 he examined the condition of the culvert, and that he found that logs lay in the mouth of said culvert.

Dr. Poston, after testifying that he frequently noticed the culvert in passing, further testified that he passed there a few days before the trial and noticed obstructions of logs, brush, and leaves, in the mouth of the culvert. Again he was asked if he had examined the culvert recently with reference to its bed, and in course of his answer to that and succeeding questions testified, that the culvert seemed to be considerably stopped up with brush and leaves and about half full of dead water; that the top of the culvert does not extend more than six or eight inches above the level of the accumulated mud near the mouth, and that considerable mud and brush accumulated there. In answer to the question how long it had been that way, he said he couldn't say and didn't remember, that he saw it only three or four days before the time he was giving his testimony in October, 1883, and that it was in very much the same condition.

The witness, Wood, also testified that he had seen the indication and traces that the water had been above

the mouth of the culvert, but not before the accident. Neither of these witnesses testify, as we understand the record, as to the condition of the culvert and track, in these respects, at and about the time of the accident. Their statements as to conditions so long afterwards should not have been received. Too much time had elapsed since the accident had happened. In many cases it is said that the evidence should be confined to the time, place, and circumstances of the injury, and the negligence existing then and there. *Parker v. Portland Co.*, 69 Me. 173; *Railroad v. Huntley*, 38 Mich. 537.

We are not inclined to adhere to this rule in all its strictness. In this class of cases it is often wholly impracticable to produce the evidence of the conditions of things at the precise time of the occurrence. It will, we think, ordinarily be sufficient to show the state of facts, tending to show negligence in the construction and maintenance of the railroad at the time, or recently before or after, and within such reasonable time as will, from the nature and circumstances of the case, induce or justify a reasonable presumption, or inference, that the condition is the same and unchanged. This rule is, we think, violated in the admission of the above and other evidence of like import which showed the condition of the culvert, at a period too remote to permit the fair and just inference that it was in the same condition as to such obstructions at the time of the accident, a year and even two and three years previous. 1 Greenlf. Evid. 491, and note; 2 Starkie Evid. 381; Shear. & Redf. on Neg., sec. 448.

Other errors are assigned as to the action of the court upon instructions and several of these, are, we think, erroneous. The third one given for plaintiff is as follows:

"3. The court instructs the jury that, although they may believe from the evidence that the negligence

of the engineer, McPherson, may have contributed to cause the accident by which Nicholas Stoher lost his life, yet if they further believe from the evidence that the negligence of the defendant, in failing to provide suitable roadbed and culvert also directly contributed to cause said accident and the death of Nicholas Stoher, then the negligence of said McPherson is no defence to this action.''

This instruction, even if otherwise correct, is subject to the criticism, we think, that it does not clearly leave to the jury the question whether or not defendant had failed to provide a suitable roadbed and culvert, but seems to assume that it had not, and to submit to the jury whether its negligence in that respect, which is assumed also, directly contributed to cause said accident, etc.

The fifth instruction given by the court of its own motion is as follows :

''5.  If the jury in this case find for plaintiff, then, in assessing the damages, you may award any sum not exceeding five thousand dollars, that you deem fair and just, having reference to the necessary injury resulting to the plaintiff, Bertha Stoher, by reason of the death of her father, Nicholas Stoher, and, also, having reference to any *mitigating or aggravating circumstances, you may find* in the case.''

As to this instruction we cannot agree to the claim, made in defendant's behalf, that the verdict should be limited to nominal damages, even if the evidence fails to show what the earnings of deceased were, at the time of his death.   The loss of a parent's care, in the education, maintenance, and pecuniary support of children, has, in addition to their moral value, an appreciable pecuniary value.   *Tilley v. Hudson River Company*, 29 N. Y. 252 ; 37 N. Y. 287.   In such cases juries are not confined to any exact mathematical calculation, but are vested with considerable discretion, which the courts

will not interfere with unless it has been abused.　Shear. & Redf. on Neg. [3 Ed.] sec. 613.

But whilst the rule thus announced may be proper in certain cases, it is, we think, in some respects, inapplicable to a case of this sort.　There is, in this case, neither allegation nor proof of any malice, wickedness, wantonness, or gross negligence as to the tort complained of, and there is a total absence of evidence as to any "aggravating circumstances" in the case.　The case is not one authorizing vindictive or exemplary damages, and where, as in this case, there was no evidence of wilful misconduct, or entire want of care, indicating indifference to consequences, the jury, in determining the compensation in damages, cannot properly consider aggravating circumstances, which do not exist.　*Graham v. Railroad*, 66 Mo. 536; *Perkins v. Railroad*, 55 Mo. 201; *Doss v. Railroad*, 59 Mo. 27; *Morgan v. Durfee*, 69 Mo. 469.

For the above reasons the judgment of the circuit court, as well as that of the court of appeals, will be reversed, and cause remanded; and it is accordingly so ordered.　All concur, Norton, C. J., in the result.