McPHERSON *et al.*, *by next friend* v. The St. Louis, Iron Mountain & Southern Railway Company, *Appellant*.

97 253
100 206
97 253
101 42
97 253
105 196
97 253
109 531
112 274
50a 627
97 253
114 346
97 253
60a 560
97 253
93a ¹459
97 253
172 ¹683
97 253
178 ⁵545

1. **Practice in Supreme Court:** DEMURRER TO EVIDENCE. A defendant who offers evidence on his own behalf after his demurrer to the plaintiff's evidence has been overruled, thereby waives objection to the action of the trial court on said demurrer, except that the supreme court may consider the same in connection with all the evidence in the case.

2. **Railroad:** DEFECTIVE ROADBED: EVIDENCE. In an action against a railroad for negligence in not providing sufficient culverts for the escape of water collected and accumulated by its embankments and excavations, by reason of which a portion of its roadbed suddenly gave way, evidence of a non-expert witness, who had lived in the neighborhood all his life, was competent as to the capacity of the culvert to carry away accumulated water in time of freshets.

3. ———: ———: ———. His evidence was also competent as to whether the traces of a storm which caused the roadbed to give way, found the morning after the accident, showed the storm to have been greater than previous ones.

4. ———: ———: ———. In such action, it is not reversible error to exclude evidence that the engineer, under whose supervision the road was constructed, was competent and skillful, it appearing that other witnesses had testified that the railroad was, in all respects, properly constructed.

5. **Negligence:** RAILROAD: CONSTRUCTION OF ROADBED. A railroad company, in constructing its roadbed, is not bound to provide against an unprecedented flood, but is bound to provide sufficient culverts or other means for the escape of water collected and accumulated by its embankments and excavations in any storm or rain not extraordinary in character and violence.

6. **Action by Infant for Death of Parent:** MEASURE OF DAMAGES. In an action by infants for the death of their father caused by the defendant's negligence, a fair and reasonable compensation to the infant plaintiffs for the loss of their father's services as a means of support during their minority is a correct measure of damages.

7.  **Practice :** ORAL REMARKS TO JURY AFTER THEY HAVE RETIRED. It is not error for a trial court, upon the communication of a retired jury that they are unable to agree, to have them brought into court, and, after an unsuccessful search for defendant's counsel, address them orally to the effect that their conference should be held in a spirit of fair investigation of the cause, with a view to reaching a verdict, but that no juryman was expected to surrender his honest convictions merely to reach an agreement.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Bennett Pike* for appellant.

(1)  The plaintiffs' own testimony did not make even a *prima-facie* case, and the demurrer to the evidence should have been sustained. Wood on Master and Servant, secs. 368, 419 ; *Huffman v. Railroad,* 78 Mo. 54.  (2)  The court committed error in the admission of testimony offered by plaintiffs, against the objection of defendant.  Greenl. on Ev. (13 Ed.) p. 491, sec. 440. (3)  The court refused to admit proper and legal testimony offered by defendant. *Fowler v. Railroad,* 56 Tex. 452.  (4)  The court erred in giving the instructions numbers one, six and seven, upon its own motion. *Fitzgerald v. Hayward,* 50 Mo. 516 ; *Goetz v. Railroad,* 50 Mo. 472 ; *Owen v. Buckschmidt,* 54 Mo. 289 ; Pierce on Railroads (Ed. 1881) 367 and cas. cit.  (5)  The court committed error in refusing to give the instructions marked nine, ten and eleven, asked by defendant. *Rockwell v. Railroad,* 64 Barb. 438 ; *Read v. Spalding,* 30 N. Y. 630; *Michaels v. Railroad,* 30 N. Y. 564; *Manson v. Davis,* 20 Pa. St. 171 ; *Railroad v. Gilliland,* 2 A. & E. R. R. Cas. 170.  (6)  The court committed error in receiving the communications from the foreman of the jury, and from two members of the jury, while the jury were deliberating upon their verdict, and in making the address to

the jury in answer to their communications, set out in the record. *State v. Alexander*, 66 Mo. 147, *et seq.*; 2 G. & W. on New Trials, 360, 362; 1 G. & W. on N. Tr. (2 Ed.) 75; *State v. Cross*, 27 Mo. 332; *State v. Donley*, 64 Mo. 148; *State v. Schoenwald*, 31 Mo. 147; *Knight v. Inhabitants*, 13 Mass. 220; *Eden v. Railroad*, 72 Mo. 212.

*A. R. Taylor* and *P. Leahy* for respondent.

RAY, C. J.—This is a suit by plaintiffs, by next friend, in the circuit court of the city of St. Louis, to recover damages for the death of their father, Charles McPherson, who was killed by the derailment of a passenger train on defendant's railway near Bismarck, Missouri, while he was in charge of the engine drawing the train as locomotive engineer. The trial resulted in a verdict and judgment for plaintiffs.

At the conclusion of the evidence in plaintiff's behalf, an instruction in the nature of a demurrer to the evidence was asked by defendant and was refused by the court, and this action is the first ground of error complained of in this court. By putting in its own evidence, defendant thereby waived its exception in this behalf, except that the court may consider the same in connection with all the evidence in the cause, as we have recently held in the cases of *Bowen v. Railroad*, 95 Mo. 268, and *Guenther v. Railroad*, 95 Mo. 288.

A further exception was saved to the action of the court in overruling defendant's objections to the following question:

"Q. State what the result of your examination was, as to the capacity of those culverts to carry away waters that accumulated there in time of freshets."

The objections thereto were incompetency, and because the question called for an answer that required expert knowledge and skill, of which it was not shown

that the witness was possessed. The question was addressed to the witness, John W. Denton, who had no knowledge of engineering, but was a farmer of the immediate locality, having lived there all his life, and within two or three hundred feet of said culvert. Prior to the question objected to, said witness had testified, and we believe without objection, that the culvert above the wreck consisted of two box holes about four feet square, with a partition wall between them, and that the culvert was too small for the amount of water that had to go through it. In answer to the above question, he testified that the capacity was not large enough to carry away any ordinary waters that accumulated there as the result of a freshet, and that the drift, leaves and logs of any ordinary flood were likely to choke up and dam the floods. His testimony further contains some accounts or descriptions of the adjacent country, and his estimate of the drainage of the locality.

Even if the question is to be regarded as calling for the opinion of the witness, and even if portions of the evidence as to the capacity and sufficiency of the culvert are to be regarded as containing his opinion on these subjects, the question and evidence was, we think, nevertheless admissible and receivable. The inquiry does not involve any unmixed question of science and skill, but was one on which the judgments of ordinary persons having sufficient opportunity for personal observation, and giving in their testimony the facts of their observation, might properly be received, for such comparison and weight as the jury might see fit to give them.

In *Porter v. Manufacturing Co.*, 17 Conn. 249, a similar question, as to whether a certain dam was capable of sustaining the water accumulated by it suddenly in time of freshets, was considered and the opinions of witnesses, with no peculiar knowledge or skill as to the construction of such embankments, having been received in evidence, the court say: "The judgment

or opinion of these witnesses, as practical and observing men, was sought on this point on the facts within their knowledge and to which they testified. * * * The opinions of such persons, upon a question of this description, although possessing no peculiar skill on the subject, would ordinarily be more satisfactory to the minds of the triers than those of scientific men who were personally unacquainted with the facts in the case; and to preclude them from giving their opinion on the subject in connection with the facts testified to by them would be to close an ordinary and important avenue to truth." The question and evidence in that behalf was, we think, competent and admissible. See also 27 Conn. 192; *Hardy v. Merrill*, 56 N. H. 227, and cases cited.

Defendant also objected upon the ground of incompetency to a further question asked this same witness, as follows: "Did the traces of this storm, which were found next morning, show to you that it was anything greater than storms that you have seen before," to which he answered, "No, sir, it did not, didn't appear to be to me. In fact I have seen traces of water higher right there at our house than it was at the time of this freshet before the wreck." The question and evidence was manifestly competent and pertinent, as it tended to show that the storm was not an extraordinary or even an unusual one, the character of the storm being a principal inquiry and defense in the cause.

Nor do we perceive any reversible error in the exclusion of the offer of defendant to show by the witnesses Matner and Flad, that James H. Morley, under whose supervision the railroad was constructed, was a competent and skillful engineer, inasmuch as said Morley and said Matner and Flad all testified that the railroad was in all respects properly and skillfully constructed.

In the matter of instructions, the first given by

the court of its own motion is complained of and is as follows :

"1.   If the jury find from the evidence that Winifred and Reginald McPherson were, on May 9, 1880, the minor children of Charles McPherson, and that on May 6, 1881, Jennie McPherson was appointed by the clerk of this court, Charles F. Vogel, as next friend of said minors ; and if they further find from the evidence that the death of Charles McPherson was directly and solely occasioned by the failure of defendant to keep its track in a reasonably safe condition for the passage of its trains ( at the point where the accident to Charles McPherson took place ), in failing and neglecting to provide a reasonably suitable culvert to discharge, in case of all usual and ordinary rain storms and freshets at that place, the water which would there accumulate, sufficiently to render said railroad track at that point reasonably safe for the passage of trains, or in failing to maintain said culvert in a reasonably fit condition to so discharge such water in all usual and ordinary rain storms so as to leave said track there in a reasonably safe condition for the passage of trains ; and if the jury further find from the evidence that at and before said accident, the deceased, Charles McPherson, was exercising ordinary care and vigilance on his part to avoid danger, then the jury should return a verdict for plaintiffs."

There was, we think, evidence in plaintiffs' behalf which tended, with more or less force, to show that the rain in question was not extraordinary or unprecedented in that locality, and that the culverts or water-ways provided were insufficient to carry off the waters of ordinary and not unusual though heavy rains.   The defendant was not bound to provide against an unprecedented flood, but was bound to provide sufficient culverts or other means for the escape of water which its embankments and excavations might collect, in any

storm or rain, not extraordinary in character and violence, and if, upon the occasion in question, the railroad structure gave way under the engine and train under the supposed circumstances of the instructions, its liability for resulting injury is we think clear. Shearman and Red. on Neg., secs. 444, 445, 448; *Stoher v. Railroad*, 91 Mo. 509.

Nor do we think this instruction vulnerable to the criticism that it fails to meet the issues made by the pleading, or the evidence in the cause. It embraces, we may observe, the inquiry as to the conduct of said engineer which the answer charged to have been negligent, and a finding of the facts submitted therein would necessarily involve the inquiry as to the further special defense, that the injury to the railroad and the death of said engineer was the result of an extraordinary storm. This special defense just mentioned was very clearly put to the jury in the second and fourth instructions given at defendant's instance, and these, together with the third also given for defendant, and those given by the court of its own motion, obviated the necessity for giving the ninth, tenth and eleventh, asked by defendant.

The seventh, also given by the court of its own motion, is somewhat faulty in construction, but the omission of the word "evidence" therefrom furnishes no sufficient ground for reversal of the judgment. Nor do we think it incorrect as to the measure of damages which is declared to be a fair and reasonable compensation to the infant plaintiffs for the loss of their father's services as a means of support during their minority. *Stoher v. Railroad*, 91 Mo. 509, 517, 518, 519.

There is another incident of the trial which remains to be considered. After the jury had retired, and had been deliberating several hours, perhaps, upon their verdict, the foreman of the jury sent the court a communication in substance that two men in the panel claimed it to be unjust for employes to recover damages in consequence of injuries sustained while in the discharge of

their duties. The court, it seems, also received at the same time a further communication signed by two of the jurors, who, it seems, were not the dissenting jurors, stating in substance that after numerous ballots and trials they were convinced it would be impossible to agree, and futher stating that the jury-room was so damp as to render it unhealthy to be kept there. The record further shows that the court, after receiving said communication from the foreman and said two jurymen, immediately caused the jury to be brought into court, and in answer to said communications, and "having first sent the sheriff to look for defendant's attorney, and he not being able to find him, and in presence of R. H. Durphy, one of defendant's agents or employes, and without other notice to defendant, or its attorney, and not in the presence of said attorney," addressed them certain remarks which are preserved in the record and which, together with said action of the court, are complained of by defendant.

With reference to the remarks themselves, we may observe that they are not subject to the same objections as were those of the trial court, in *Eden v. Railroad*, 72 Mo. 212, to which we are cited and which were disapproved by this court. The jury in this case were brought into court and told that, as aids to the court, and to avoid a waste of time, incident to their disagreement, their conference should be had together in a spirit of fair investigation of the cause, with a view of reaching a verdict if possible ; but at the same time, the jury is also expressly told that no juror is to be expected to surrender his honest convictions or opinions merely to reach an agreement. The jury were further told to return to their retirement for a short time longer, to see if they could not reach a verdict, and with the plain intimation that if, upon a further short consultation, they were still unable to agree, they would then be finally discharged.

Communications with the jury, not made in open

court, and in the presence and with the knowledge of
the parties or their attorneys, have been frequently con-
demned. Public policy unquestionably requires that
communications ought not, even in civil cases, to take
place between judge and jury unless in open court, and if
practicable, in the presence of the respective parties and
their counsel. This whole subject was fully considered
by this court, in the case of *Chouteau v. Jupiter Iron
Works*, 94 Mo. 401, and we adhere to the views as there
expressed, but in order to sustain the position of defend-
ant in the case at bar, we will, we think, have to go
somewhat further, and hold that the absence of counsel
will, *ipso facto*, required a reversal of the judgment
rendered in the cause, although it may further appear
that the trial court found it impracticable, after reason-
able effort through its sheriff, to secure his attendance,
and although the communication itself may not apply to
any evidence in the cause or to the instructions, except
to say that those received are the rules of law which
govern the case and should be accepted and followed, and
in itself may be a proper one, if made in open court, and
in the presence of counsel. We are not satisfied we
ought to go so far. The language of this court, in the
case of *Chouteau v. Jupiter Iron Works, supra*, on this
question, is as follows : "Many courts of last resort in
the United States have held that communications ought
not to take place between the judge and the jury, after
the cause has been submitted to them, except in open
court, and, if practicable, in the presence of the counsel
in the cause." Other authorities elsewhere use the
same language or qualification as above.

In respect to the search by the officer for the absent
counsel, the facts are not all before us or preserved, except
as indicated. Where the officer went, whether to other
court-rooms, to the office or house of counsel, or to such
places as, from his habits, he might be deemed likely
to be, and what time had elapsed before his return with

his said report, none of these matters appear, but in view of his being a public officer, acting in behalf of the court, and that the trial court had the facts and circumstances fully before it, we think we must assume that the effort of the officer to secure the attendance of counsel was a reasonable one, and that the court might, upon his said report, properly conclude that it was impracticable to secure the presence of said counsel in a reasonable time.  There are, we think, grave objections of public policy against arresting judgments, in such instances, upon the mere absence of counsel, after proper attempts by the court to secure their attendance, for this would enable counsel, by neglecting to attend court, or by voluntary and unreasonable absence, to interfere unreasonably with the business of the court, and further progress of the cause.  Again, a due regard for the efficient administration of the law will not permit jurors alone to determine when their deliberations as to their verdict shall cease, but requires that the trial courts have a large and reasonable discretion in this behalf.  Under all the circumstances of the case now before us, in view of the unsuccessful effort of the court, through the sheriff, to obtain the presence of counsel, and in view of the cautions and limitations contained in the remarks in question, such as, that no juror was expected to surrender any honest conviction he might have in the cause, and the intimation that the jury would be discharged if they failed to agree after a further conference for a short time, we feel constrained to acquiesce in the action of the trial court in respect to said communication with the jury so held in open court, and therefore overrule defendant's said exception in this behalf.

This leads to an affirmance of the judgment, and it is accordingly so ordered.  All concur, except BARCLAY, J., not sitting.