[No. 2571. Decided September 15, 1897.]

ELLEN J. WALKER et al., Respondents, v. E. McNEILL,
Receiver of the Oregon Railway and Navigation Com-
pany, Appellants.

DEATH BY WRONGFUL ACT — NEGLIGENCE OF RAILROAD COMPANY —
PLEADING AND PROOF — ASSUMPTION OF RISK — SPECIAL INTERROG-
ATORIES — MEASURE OF DAMAGES — EXCESSIVE DAMAGES.

Where a complaint · for personal injuries received from the
wreck of an engine charges that defendant carelessly and negli-
gently failed to provide a safe road-bed and a safe and suitable
engine to do the work by reason of its being too heavy for the
road, and carelessly and negligently permitted the grades and
curves in the road and especially the fills and embankments
thereon to be and remain too narrow, and permitted the road to
become and remain out of repair and permitted the ties on which
the rails rested to become rotten and loose, so that the road was
unnecessarily dangerous and unsafe, the fact that the engine first
left the track in a cut before it reached and plunged over the em-
bankment, if a variance at all, would be an immaterial one.

In an action against the master for injuries to the servant,
assumption of the risk of employment is a matter of defense to
be pleaded and proven, and if not urged in the court below can-
not be raised as ground of objection to an instruction that it fails

to include such matter as an element for consideration upon the question of negligence or contributory negligence of the parties.

The question of whether defendant has used reasonable care and prudence in sending a heavy engine over the road, in the condition of the track at the time, is properly one for the jury.

Reasonable care has reference to all the circumstances and conditions surrounding the railroad and its operation, the amount of traffic, the expense attending the precautions which should be used, and the purpose of the road.

The fact that a majority of the ties in a railroad bed were rotten at a point where an engine was derailed, that they were so decayed that the spikes holding the rails upon the ties were loose and easily slipped out, permitting the rails to spread in case of considerable pressure, and that defendant had, or ought to have had, knowledge of this condition, is such proof of negligence as to preclude the court's taking the case from the jury.

The submission to the jury of special interrogatories is, under Code Proc., § 375, a matter entirely in the discretion of the trial court, and a refusal to submit cannot be regarded as error.

The measure of damages for the death of a husband and father through the wrongful act or neglect of another, should include not alone the pecuniary value of his wage-earning abilities, but also the value of his daily services, attention and care bestowed on his family, the loss of comforts, conveniences and of education suffered by minor children, or, in other words, the loss of nurture, of intellectual, moral and physical training which only a parent can give to children; but damages by way of solace to the affections of wife or children should not be allowed.

An award of $40,000 to a wife and minor children for the wrongful death of the husband and father is excessive and should properly be reduced to $25,000, when it appears that decedent, a kind and affectionate husband and father, was, at the time of his death, twenty-five years of age, in good health, sober, industrious, a good business manager and earning $150 per month.

Appeal from Superior Court, Columbia County.—Hon. R. F. STURDEVANT, Judge. Affirmed.

*Cox, Cotton, Teal & Minor,* for appellant.

*A. S. Bennett,* and *Will H. Fouts,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Action by the widow and two minor chil-

dren of Robert Walker, deceased, respondents, against McNeil, receiver of the Oregon Railway and Navigation Company, appellant, to recover damages for the death of the decedent by negligent act of appellant.

On the 22d of December, 1894, Robert Walker, respondents' decedent, who was then an engineer in the employ of appellant, was ordered by appellant to take a heavy helper engine to assist one of appellant's passenger trains up the hill from Bolles Junction to Alto. This engine was heavier than was usually employed in the passenger service, although not the heaviest one on the road. It was ordinarily used in helping freight trains up the hill, and it does not appear whether it had been used before upon a passenger train. At this time the passenger train was unusually heavy and Walker was directed to assist it with his engine. For some distance from Bolles Junction in the direction of Alto there is an up grade, and the grade then drops down for a short distance. It was upon the down grade at a point on a reverse curve where the railroad emerges from a small cut and passes to a fill that the wreck occurred which caused the death of Walker. The train was running at the usual speed which was required—from twenty to twenty-five miles an hour. Walker's engine, as well as the regular engine attached to the train, and the baggage car were thrown down the embankment. The fireman on Walker's engine, the men on the other engine and the baggagemen jumped from their places and escaped with more or less injury. Walker remained at his post to put on the air and reverse the engine. He was thrown over the bank with his engine and killed. The passenger cars were not thrown from the track. At the time of his death Walker was twenty-five years of age, was in good health, sober, industrious, a kind and affectionate husband and father and a good business manager. One of the

children at that time was about two years old and the other was born a few months after his death.

The material allegations of the complaint which are on review here are as follows:

" That the said defendant carelessly and negligently failed to provide a safe road-bed for said Walker to pass over in so doing, and carelessly and negligently failed to provide him with a safe and suitable engine with which to do said work; but on the contrary carelessly and negligently permitted the grades and curves upon said road, and especially the fills and embankments thereon, to be and to remain too narrow and otherwise of an improper construction, so as to make the same likely to give way, and permit the ties and rails to give with a heavy load, and also permitted said road to become and remain out of repair, and permitted the ties upon which the rails rested to become rotten and loose, so that said road was grossly and unnecessarily dangerous and unsafe.

"That said defendant further carelessly and negligently ordered said Walker to go over said road with an engine and train which was too heavy for the road and for the character of the fills and embankments thereon, and also permitted the engine upon which said Walker was sent out, and which he was directed to take, to be and remain out of line and untrue, and out of level upon its wheels, and generally unsafe and out of repair.

"That on said date and while said Walker was passing over said road from Bolles Junction to Alto, with and upon said engine, under orders of defendant, as aforesaid, at a point between said stations where there is a curve in said road, and a high fill thereon, the engine, which he was taking and upon which he was riding as aforesaid left the track—by reason and on account of the general bad condition of the road, and the rotten and loose condition of the ties as aforesaid, and by reason and on account of the narrow and improper construction of said fill and curve, and by reason and on account of the said engine being out of repair, and too heavy for the road as aforesaid, and rolled down the embankment, with and upon said Walker,

thereby inflicting upon him great bodily injury, causing his death immediately thereafter.

"That at the time of said occurrence, and previous thereto, the said Walker was a man of sober and industrious habits, good health and good ability as a manager of property and affairs, and was a skillful engineer, and able to earn high wages in such capacity; that in addition thereto he was a prudent, kind and affectionate husband and father and that the plaintiffs were each and all dependent upon him for support, education and maintenance.

"That by reason of the careless and negligent acts and omissions of the defendant, causing the death of said Walker hereinbefore set forth, the plaintiffs have lost his earnings and accumulations, and his foresight and management, and have also been deprived of his support, maintenance, comfort and society, and his advice, counsel and oversight as a husband and parent, and are and have been damaged thereby, etc."

Appellant moved to strike from the complaint the allegations relating to the damages suffered by plaintiffs as follows: first, the words "that in addition thereto he was a prudent, kind and affectionate husband and father;" second, the word "comfort" following the word "maintenance" and preceding the word "and;" third, "and his advice, counsel and oversight as a husband and parent." This motion was overruled and an exception taken by appellant.

The superior court instructed the jury:

"I. It is the duty of the railroad company to see that due and reasonable care is used in the inspection of its road bed, ascertaining its condition and in keeping it in repair.

"II. If therefore you find from the evidence that the road bed at the place of injury, was out of repair, and the ties rotten, and that this bad repair and rotten condition of the ties caused the injury, and if you further find that the receiver of the railroad company, or his agents

in charge of the track department of the road, knew of
the bad condition of the track, or could have ascertained
its bad condition by a reasonably careful inspection long
enough prior to the accident to have repaired the same,
and if they were negligent and careless in failing to in-
spect the road, or in failing to inspect the same, and that
negligence and carelessness caused the injury, without
fault or negligence on the part of Robert Walker, then the
plaintiffs can recover.

"III. It is the duty of the railroad company, or its re-
ceiver, to keep its track in repair, so that it is safe for the
kind of engines and rolling stock that it sends over it, so
far as reasonable care and prudence will make it so.

"IV. Therefore if you should find that the track in
question was unsafe for an engine, such as the one that
Walker was riding upon at the time of his death, the fact
that the track would have been safe for lighter engines
of different construction, would not necessarily be a de-
fense."

Appellant assigns the giving of each of the above in-
structions as error. The court also gave the following in-
struction upon the measure of damages:

"II. While you should not allow the plaintiffs any-
thing for the mere loss of the society of the deceased, yet
you have a right to take into consideration, not only his
earning capacity, but also the care and attention which
such a man would give to his wife and children, and also
the loss of his advice and training as a husband and father,
which they have suffered by his death. In other words,
the plaintiffs are entitled to be compensated for the sub-
stantial and material benefits which they would have re-
ceived from the deceased if he had lived, and which they
have lost by reason of his death. And that includes what-
ever support they would have received from him, and the
net earnings which he would have earned and ultimately
applied to their benefit, and the loss of his care, training
and advice as a husband and father."

To which an exception was taken.

Appellant requested an instruction to the jury to return a verdict for appellant, which was denied. The jury returned a verdict for respondents and assessed the damages at $40,000. After motion for a new trial made by appellant and overruled by the court, judgment was duly entered upon the verdict.

1. The learned counsel for appellant maintain that the complaint contains no allegation of negligence based upon the condition of the track in the cut, and the court erred in submitting such condition to the consideration of the jury. It will be observed that the charge in the complaint is that appellant carelessly and negligently failed to provide a safe road-bed, and a safe and suitable engine with which to do the work, but, on the contrary, carelessly and negligently permitted the grades and the curves in the road, and especially the fills and embankments thereon, to be and remain too narrow, and also permitted the road to become and remain out of repair, and permitted the ties on which the rails rested to become rotten and loose, so that the road was unnecessarily dangerous and unsafe.

While it might be interesting to review the able argument of counsel in the verbal criticism of the language employed in the complaint, it would extend the limits of this opinion too far. The negligence here charged consists of two elements; failure to provide a safe road, with specification of the delinquency in particulars, to wit: the grades and curves, the fills and embankments, were permitted to be and remain too narrow and of improper construction, so as to make them likely to give way and to allow the ties and rails to give with a heavy load; and again, the road was allowed to become and remain out of repair, i. e., the ties on which the rails rested were rotten and loose; and that the engine was unsafe to do the work—

that it was too heavy for the road and for the character
of fills and embankments.

We think the objection to the complaint untenable; but
if it be conceded that the allegations of negligence in the
complaint were confined to the fill, and the train had been
derailed in the cut instead of on the fill, the variance would
be too slight for serious consideration under our Code of
Procedure.

" Sec. 217. No variance between the allegation in a
pleading and the proof shall be deemed material, unless
it shall have actually misled the adverse party to his preju-
dice in maintaining his action, or defense upon the merits.
Whenever it shall be alleged that a party has been so misled,
that fact shall be proved to the satisfaction of the court,
and in what respect he has been misled, and thereupon
the court may order the pleading to be amended upon such
terms as shall be just."

Bliss on Code Pleading (2d ed.), § 310a, says:

"As to the allegation of negligence. The circumstances
which excuse certainty, furnish additional reason why the
pleader should not be required to give the specific acts or
omissions which constitute negligence. The sufferer may
only know the general, the immediate cause of the injury,
and if it be an occurrence that usually results from neg-
ligence, the opposite party must explain it and show due
care."

The appellant in his answer, after a denial of negligence
and of the material allegations of the complaint, set up
as an affirmative defense contributory negligence on the
part of respondents' decedent, and also assumption of risk
of the employment, and maintains that the second instruc-
tion given by the court did not include as an element for
the consideration of the jury the assumption of risk of
employment by the deceased, while purporting to state
each element of the case. The testimony at the trial

discloses that the deceased engineer had been over the particular portion of the road where the fatal accident occurred some eight times. No further proof of knowledge of the defects existing in the road-bed are shown than the fact that the engineer had thus been over the road a few times with freight trains. It does not appear from the record before us that this was a question relied upon by counsel in the trial below, and we do not think there is evidence sufficient to warrant an instruction upon this defense. The sixth instruction, given at the request of appellant, is as follows:

"In order that the plaintiffs may recover, you should be satisfied from the evidence—First: That some one or more of the defects in the road or track alleged in the complaint actually existed. Second: That such defects were such as a reasonably prudent man in the exercise of ordinary care would not allow to exist. Third: That Walker's injuries resulted from such defects. Fourth: That the defendant knew of such defects or in the exercise of ordinary care should have known of them. If the evidence fails to satisfy you upon any of the four points above mentioned you cannot find for the plaintiffs, but must find for the defendant."

It would be at variance with the view often expressed by this court to consider a cause brought here upon another or different theory than that presented to the trial court. It has already been determined that contributory negligence is a defense to be pleaded and proven in this state. We view assumption of the risk of employment as of kindred nature. The better authorities seem to favor this rule; and it is certainly on principle the natural and orderly method of pleading and proof.

The appellant also insists that the third and fourth instructions do not state the law. Reasonable care has reference to all the circumstances and conditions surrounding

the railroad and its operation, the amount of traffic, the expense attending the precautions which should be used, and the purpose of the road; and many other considerations enter into the question. All this is for the jury, and from the testimony, ordinarily, in each case the jury must determine what precautions a reasonable, prudent employer must use.

The court said in *Johnson v. Bellingham Bay Improvement Co.*, 13 Wash. 455 (43 Pac. 370):

"It is an elementary proposition which does not call for citations of authority, that the master must furnish a safe place in which he requires his servants to work, and that he must furnish them safe appliances. He is, of course, not bound to insure the employee, but he is bound to use reasonable care in the selection and construction of the machinery and the appliances."

2. The evidence in the record discloses that perhaps five out of six of the ties on the road-bed of appellant in both cut and fill, along where the accident occurred were rotten, that they were a mere shell, and that where the derailed car-wheels touched them they broke in two, that they were so decayed that the spikes holding the rails upon the ties were loose and easily slipped out and that the rails spread. Here was sufficient cause for the accident. No other cause of the accident than the bad condition of the road-bed was shown or intimated at the trial. Whenever a car or train leaves the track it proves that either the track or machinery or some portion thereof is not in a proper condition, or that the machinery is not properly operated. *Edgerton v. New York & Harlem R. R. Co.*, 39 N. Y. 227; *Seybolt v. New York, etc., R. R. Co.*, 95 N. Y. 568 (47 Am. Rep. 75).

There was testimony introduced by the respondents tending to prove that a large proportion of the ties extend-

ing all the way from where the first indications of any of the wheels having left the rails appear to the place where the engine actually left the track and went into the ditch were so rotten as to be practically worthless for the purpose of holding the track in place against any considerable pressure. There was also evidence given by an employee of the defendant that he had gone over this defective road some three months before and had reported its bad condition to the section foreman of defendant, who was in control of that portion of the track. It is apparent that the court properly overruled the request for a verdict for defendant.

It is also complained that the court refused to submit the following interrogatories to the jury upon request of appellant:

" Where was the train, or any portion of it, first derailed? "

" Was such derailment the cause of the overturning of the engine? "

The form of these interrogatories is open to criticism. The first one required the jury to point out the exact place where the train or any portion of it was first derailed. Possibly the jury could not tell. It does not seem to be necessary in order to find upon the main question of negligence. The second one seems to ask what obviously appeared, i. e., that the derailment of the train caused the overturning of the engine. But it has been held in this court that the submission of special interrogatories under the code is entirely in the discretion of the trial court, and the refusal to submit cannot be regarded as error. *Pencil v. Home Ins. Co.*, 3 Wash. 485 (28 Pac. 1108); *Bailey v. Tacoma Traction Co.*, 16 Wash. 48 (47 Pac. 241).

The most serious question for consideration is the amount of damages assessed by the jury; and under this

phase of the case the motion of appellant to strike from the complaint will be considered without specially further referring to it. Sec. 138, 2 Hill's Code, states the rule for damages for death caused by the wrongful act or neglect of another as follows:

" In every such action the jury may give such damages, pecuniary or exemplary, as under all circumstances of the case may to them seem just."

This is a very liberal rule, and while the damages must be pecuniary in this case, they do not exclude a consideration of the social and domestic relations of the parties or their kindly demeanor towards each other. They are a part of all the circumstances of the case. *Beeson v. Green Mt. G. M. Co.*, 57 Cal. 20.

But damages by way of solace to the affections of a wife or children cannot be allowed. Tiffany on Death by Wrongful Act, § 160, observes:

" It seems that the pecuniary value of the support of the head of a family cannot be limited to the amount of his wages earned for the benefit of his family, but that his daily services, attention, and care on their behalf may be considered."

And at § 162:

." The damages for loss of support suffered by a minor child include the loss of such comforts, conveniences, and also of such education as the parent might have been expected to bestow upon him." 3 Sutherland, Damages (1st ed.), 282-284; *Tilley v. Hudson River R. R. Co.*, 29 N. Y. 252 (86 Am. Dec. 297); *Stoher v. Ry. Co.*, 91 Mo. 509 (4 S. W. 389).

The word "pecuniary " is not construed here in a strict sense. It will not exclude the loss of nurture, of the intellectual, moral and physical training which only a parent

38—17 WASH.

can give to children, nor is the same certainty of loss re-
quired to be established as in ordinary actions. The dam-
ages are largely prospective and their determination sub-
mitted to the just discretion of juries upon very meager
and uncertain data. That deceased was a prudent, kind
and affectionate husband and father was a matter properly
for the consideration of the jury in estimation of the value
of his life to respondents. The material comfort, the value
of counsel to the inexperienced child, is to be taken into
consideration. It is difficult to purchase this with money.
It is received knowledge, accepted by all men, that the
element of affectionate loyalty in the mere servant is of
pecuniary value. Of two servants hired for money and
equal in capacity, interest, industry and conscientious fidel-
ity to trust, one may be the more valuable because of a
warm and affectionate personal regard for his master. It
opens the eye and quickens the ear of service when affec-
tion aids its rendition. "What man is there of you who
if his son ask bread will he give him a stone?" Thus the
service of a kind and affectionate father will certainly be
rendered. It is the certainty which affection gives to this
service that adds the element of pecuniary value; it could
never be such offices as are performed by the mere "eye
servant."

The court properly instructed the jury, if they found
for respondents, they should then determine the amount
of their damages. These damages consist of pecuniary
loss suffered by them and the jury cannot allow anything
as a solace for the grief and anguish of the plaintiffs or
any of them. The deceased engineer was earning at the
time of his death $150 per month, was sober, industrious,
and a man of good business ability. He had an average
expectancy of life of thirty-eight years. In *Sears v. Seat-
tle, etc., St. Ry. Co.,* 6 Wash. 227 (33 Pac. 389, 1081),

a verdict of $15,000 was upheld in an action for injuries due to defendant's negligence where the plaintiff was a strong, healthy woman of the age of thirty years, and industrious, and had been earning $50 per month in addition to looking after household duties. In *Roth v. Union Depot Co.*, 13 Wash. 525 (43 Pac. 641), a verdict for $15,000 was sustained for injuries to a child of nine years of age necessitating the amputation of one of his legs.

A jury composed of persons of discretion ordinarily embracing individuals of different occupations and varied experience is to bring its practical judgment to the consideration and settlement of the damages from the loss of the husband and father in the light of all the circumstances surrounding the case, and courts should be reluctant to interfere with its conclusion when fairly made. But the rule has heretofore been established in this court that if, upon the whole case, it is thought the damages are excessive, they may be reduced by the court.

We have concluded after the most careful review of the present cause that a judgment in favor of the respondents and against the appellant for $25,000 should be approved; and under the practice heretofore adopted, the respondents are allowed thirty days in which they may remit the excess of $15,000 in the verdict awarded by the jury, and upon such remission being filed in court, the judgment will in all things be affirmed. But if no remission of the excess shall be made by respondents then the judgment is reversed and a new trial ordered.

SCOTT, C. J., and ANDERS and GORDON, JJ., concur.