Ronald J. BUECHEL, a minor, by Mary Buechel, his legally appointed guardian, Plaintiff,

v.

UNITED STATES of America (Employee of Dept. of Housing & Urban Development, an agency of the U. S. A.), Defendant.

No. 72 C 338(4).

United States District Court,
E. D. Missouri, E. D.

March 28, 1973.

Wm. L. Clinton, St. Louis, Mo., for plaintiff.

Daniel Bartlett, Jr., U. S. Atty., Terry I. Adelman, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This is an action for damages resulting to Ronald J. Buechel, a minor, by reason of the wrongful death of his mother, Marlene Buechel, negligently caused by an employee of the United States Government. The action is brought on Ronald's behalf by his maternal grandmother, Mary Buechel, his guardian. Jurisdiction is claimed and exists pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

The parties appeared before the Court on this matter on October 30, 1972, at which time oral testimony was adduced, certain exhibits were received into evidence, and the parties submitted a written stipulation of facts. After duly considering the premises of the action, the Court makes the following findings and conclusions:

## FINDINGS OF FACT

1. On July 22, 1971, at approximately 4:25 p. m. a motor vehicle collision occurred at the intersection of Chambers Road and Crown Point Drive in St. Louis County, Missouri.

2. The motor vehicles involved in said collision were (a) an automobile owned by the United States Government and operated by Gunther F. Armbruster, an employee of the Department of Housing and Urban Development, and (b) a Honda motorbike operated by Glenn A. Harding, with Marlene Buechel riding as a passenger.

3. At the time of said collision Armbruster was operating said automobile on official government business and was acting within the scope of his employment with the United States Government.

4. Chambers Road is an open and public street and highway in St. Louis, Missouri. It is four lanes wide, two lanes eastbound divided by a painted line from two lanes westbound. Crown Point Drive forms the stem of a "T" intersection with Chambers Road and extends northward. There are no traffic stop signs at this intersection.

5. Immediately preceding the collision the Government automobile was driven eastward on Chambers Road by Armbruster and the motorbike was driven westward by Harding with the decedent, Marlene Buechel, as a passenger. As both vehicles approached Crown Point Drive, Armbruster intended to turn left onto Crown Point Drive. Before turning he slowed his speed, and allowed westbound traffic in front of Harding's motorbike to proceed through the intersection. Harding was driving the motorbike in the curb lane at approximately thirty miles per hour (the posted speed limit). When the front of the motorbike was within ten to twenty feet of the intersection, the Government automobile executed its left turn onto Crown Point Drive, turning directly into the path of the motorbike. Immediately thereafter the motorbike collided with the right rear portion of the Government automobile in the Chambers Road curb lane.

6. Armbruster did not see said motorbike prior to the collision although there was no obstruction to his view of

the westbound Chambers Road curb lane. The collision occurred at approximately 4:25 p. m. The weather was clear, the pavement dry and the sun was shining.

7. Harding was unable to react, swerve, slacken speed, or stop so as to avoid the collision.

8. Both occupants of the motorbike were wearing helmets at the time of the collision with the Government vehicle.

9. Said collision of the Government vehicle with the motorbike was proximately caused by the negligent operation of the Government vehicle by Armbruster by reason of his failure to yield the right-of-way to the said motorbike and, otherwise, to exercise the highest degree of care at all times. Neither of the two occupants of the motorbike, Harding and the decedent, were contributorily negligent with regard to the collision or the resultant injuries.

10. As a direct result of said collision both occupants of the motorbike were thrown from the motorbike and Marlene Buechel, Ronald's mother, was killed instantaneously.

11. At the time of her death Marlene Buechel was sixteen years of age; Ronald Buechel was approximately eight months of age at the time of his mother's death. Ronald has had no legal living father.

12. Prior to her death, Marlene Buechel lived with her widowed mother, Mary Buechel, at 10026 Green Valley Drive, St. Louis County, Missouri. Since Ronald's birth Marlene stayed at home during the daytime periods that her mother worked at a local department store. During the day Marlene cared for Ronald and performed all of the housework, cooking and other domestic chores, in consideration of her mother's supporting her and Ronald. At the time of her death Marlene was attending high school summer sessions.

13. Marlene, other than occasionally performing babysitting services outside of her home or similar services, had never been regularly employed outside of her home. Until her death Marlene received state funded children's aid.

14. The photograph of the decedent that was entered into evidence shows her to be an attractive girl.

15. The present value of the future pecuniary loss resulting to Ronald Buechel by reason of the aforesaid death of his mother, Marlene Buechel, is $32,000.00.

16. Any recovery in excess of the expenses of the decedent's funeral is waived by Mary Buechel.

17. The amount of the funeral expenses of decedent is $1,388.24.

## CONCLUSIONS OF LAW

The Federal Tort Claims Act, 28 U.S. C. § 1346(b), grants this Court subject matter jurisdiction over actions against the United States for damages resulting from the negligent acts of its employees. See Feres v. United States, 340 U.S. 135, 138, 71 S.Ct. 153, 95 L.Ed. 152 (1950). This Act makes applicable to this action the Missouri Wrongful Death statute, § 537.080, RSMo 1969, V.A.M.S., and relevant case law regarding the issues of liability and actual damages. 28 U.S.C. § 2674. See Feres, supra at 142, 71 S.Ct. 153; see also Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065 (1956).

■ Armbruster's failure to yield the right-of-way to the oncoming motorbike with which he collided was a negligent act for which the Government is liable. See Lay v. McGrane, 331 S.W.2d 592 (Mo.1960); MacArthur v. Gendron, 312 S.W.2d 146 (S.L.C.A.1958).

■■ Ronald Buechel is entitled to recover the pecuniary benefit he would have received with reasonable probability from the continued life of his mother. Domijan v. Harp, 340 S.W.2d 728, 734 (Mo.1960); Schwarz v. Gage, 417 S.W.2d 33 (S.L.C.A.1967). The elements of this pecuniary benefit can reasonably be expected to include the cost of plaintiff's education, care, maintenance and support, Stoher v. St. Louis, I. M. & S. Ry. Co., 91 Mo. 509, 4 S.W. 389, 393 (1887), as it would continue through the full period of plaintiff's minority. M'Pherson v. St. Louis, I. M.

& S. Ry. Co., 97 Mo. 253, 10 S.W. 846, 850 (1889); Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W. 2d 920, 924 (1933). In determining the amount of this pecuniary loss the Court is not restricted to exact mathematical calculations. *Stoher, supra.*

In determining that decedent would have probably taken a great interest in Ronald's well being and development the Court has considered the decedent's conduct in caring for her child during the day and continuing her education *in* summer school. See Shepard v. Harris, 329 S.W.2d 1, 12 (Mo. en banc 1959). Furthermore, she sought to supplement her mother's financial support with state aid. The Court has also considered the fact that, prior to her death, decedent was an attractive girl. This factor certainly enhanced her earning power. See Mudd v. Quinn, 462 S.W.2d 757, 763 (Mo.1971).

Funeral expenses of the decedent, furthermore, constitute an element of recoverable damages. Caen v. Field, 371 S.W.2d 209, 213 (Mo.1963).

In consequence the Court will order recovery from the defendant in the amount of *$33,388.24.*