[No. 13589.   Department Two.   April 16, 1917.]

ALFRED S. HEIDELBACH *et al.*, *Respondents*, v. J. B. CAMPBELL *et al.*, *Appellants.*[1]

TRUSTS—TRUST EX MALEFICIO—COMMINGLED FUNDS—RIGHT TO RE-COVERY. Where an assignor for the benefit of creditors unlawfully converted the proceeds of goods held on consignment for sale, and mingled the proceeds with his own funds, there is no trust *ex maleficio* by virtue of which the consignor would have a lien upon all of the assets of the insolvent or a right to moneys on deposit as a preferred creditor, where the trust money was used in the payment of the insolvent's employees, expenses, other creditors, and in the general operation of its business, and its identity was lost; since the right of the trustee to pursue a fund depends upon the ability to trace the property, and not upon any right of lien.

SAME—CONVERSION OF TRUST FUNDS—PRESUMPTIONS. In such case there is no presumption that the trustee intended to use only what he had a right to use, in withdrawing money from the commingled funds, and that the balance remaining constitutes the trust fund, where it was stipulated that the money received by the trustee was used in the payment of the expenses of the business, etc., as this disproves the inference which would arise from the presumption as

[1]Reported in 164 Pac. 247.

HEIDELBACH v. CAMPBELL.

a matter of evidence only when the truth of the proposition was not otherwise established.

SAME—RIGHT—LIEN. Since the trust relation did not create a lien upon all the property of the insolvent, it did not create a lien upon property of like kind, whether the property be money or property of a different nature.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 10, 1916, in favor of the plaintiffs, upon stipulated facts, in an action in equity. Reversed.

*Skuse & Morrill* and *J. B. Campbell*, for appellants.
*Samuel R. Stern*, for respondents.

FULLERTON, J.—This is an action brought by Alfred S. Heidelbach and his coplaintiffs against the assignees of the S. E. Carr Company, an insolvent corporation, to recover trust funds belonging to them which they alleged passed to the assignees at the date of the assignment. From a judgment in favor of the plaintiffs, the assignees appeal.

The facts out of which the controversy arises are stipulated, and in so far as they are material to the question presented in this court, are in substance these:

On and prior to February 7, 1914, the S. E. Carr Company, a corporation, was conducting an extensive department store in the city of Spokane, dealing in general merchandise. On the date given, it assigned its property to a trustee, of whom the appellants are the successors in interest, for the benefit of all of its creditors. Prior to the assignment and on August 18, 1913, the respondents, through and under the name of one John C. Uhrlaub, consigned to the S. E. Carr Company 189 oriental rugs, identified by numbers, names, dimensions and prices shown on a written statement accompanying the consignment, of the total value of $20,140. The terms of the consignment were written, and provided in effect that the S. E. Carr Company should hold the property in trust with the privilege of sale for the

consignor's account, and that the property and proceeds received from any sale should be and remain at all times the property of the consignor; that the consignee should account for the property at the listed prices, should make returns from sales every week, and should pay freight and other expenses incurred in shipping the rugs.

Between the date of the consignment of the property to the S. E. Carr Company and the date the company made the assignment for the benefit of its creditors, the consignee returned to the consignor one rug of the value of $124.25, and sold others of the aggregate value of $1,991. The remaining rugs were in stock at the time of the assignment, and were delivered by the assignees to the respondents on their demand. The rugs sold were not accounted for, and (to quote from the stipulation): the "said S. E. Carr Co. failed to keep the funds realized from the sale of the consigned rugs separate and apart from other funds, but mixed and commingled the same with the money of the said S. E. Carr. Co., and the said S. E. Carr Co., prior to said 7th day of February, 1914, used said funds in payment of its employees and other running expenses, in paying other creditors and in the general operation of its business." Nor did the company pay the freight charges and other costs incurred in shipping the rugs; these costs and charges amounting to the sum of $338.66.

The S. E. Carr Company had in cash on the date of the assignment, $78.23 on deposit with a bank at Spokane, $16.43 on deposit with a bank at St. Louis, Missouri, and $959.03 on deposit with a bank in New York City, New York. The first of these sums was turned over to the assignee; of the second, the stipulation does not disclose what disposition was made; and the third was applied by the bank which held it on a note of $25,000 which the S. E. Carr Company owed to it and which had become due prior to the date of the assignment. The company had on hand at the time

of the assignment another fund created under the following circumstances (quoting again from the stipulation) :

"The books of the S. E. Carr Company on said 7th day of February, 1914, showed an unexpended balance of $2,600 in the account entitled 'Office Funds,' carried as cash in the office safe, and was composed of cash, cash items, memoranda, debit slips and sundry expense items that was not put through the books until the end of a customary period, such as a week or two weeks, or when the fund became nearly depleted. This fund was also used in connection with cash taken in after banking hours to distribute each morning to the cashiers throughout the different departments for change to commence the business of the day. The exact amount of cash in said fund on the 7th day of February, 1914, is not now ascertainable, but it is believed to have been somewhere between $1,200 and $1,500."

Prior to the commencement of this action, the assignees treated the account as a general account and paid dividends thereon aggregating the sum of $786.86.

On these facts, the court concluded that the respondents were entitled to recover the sum of $1,254.33, with interest thereon from August 18, 1913, the date the rugs were consigned to the S. E. Carr Company, and entered judgment accordingly.

The record does not disclose the precise ground upon which the trial judge rested his decision, but the respondents argue that the judgment is sustainable upon any one of three grounds: First, that, since the insolvent wrongfully converted the proceeds of the sales of the rugs to its own use, the sum so converted entered into and became a part of the assets which subsequently passed to the assignees, and that a trust *ex maleficio* was thereby created, by virtue of which the claimant has a lien on all of the assets of the insolvent, whether money or property; second, that, since the rugs and the money received from their sales were held in trust by the insolvent and were blended with the insolvent's own funds, the money coming into the possession of the as-

signees from the insolvent's estate is chargeable with the trust, on the presumption that the insolvent intended to use that which he had a right to use and whatever he withdrew from the account was from its own part of the common fund, and that the balance remaining is the trust fund; or, third, that equity will charge property of like kind and character passing from the insolvent to the assignees with the trust, even though it be shown that no property of the beneficiary was intermingled therewith.

The first proposition, while sustained in certain jurisdictions, is contrary to our own cases and contrary to the principles on which the right of recovery rests. The right of the beneficiary to pursue a fund and impose upon it the character of a trust is based on the principle that it is the property of the beneficiary, not upon any right of lien against the wrongdoer's general estate; and this, whether the property sought to be recovered is in the form in which the beneficiary parted with its possession or in a substituted form. *Rugger v. Hammond*, ante p. 85, 163 Pac. 408; *Chase & Baker Co. v. Olmsted*, 93 Wash. 306, 160 Pac. 952; *In re Blattner's Estate*, 92 Wash. 48, 158 Pac. 1015; *Carlson v. Kies*, 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317.

In the first of these cases, the plaintiff sought to recover from the receiver of an insolvent bank moneys received by the bank from the sale of certain local improvement bonds which the plaintiff had caused to be placed in the possession of the bank to be sold on his account. He claimed the money as a trust fund, and sought to charge the money coming into the hands of the receiver from the insolvent with the trust. Stating the grounds on which recoveries were permitted under such circumstances, this language was used:

"Now, in so far as we are concerned with the trust theory upon which Rugger seeks recovery here, we are confronted with a question of title and not a question of debt. Manifestly, in so far as Rugger seeks recovery upon that theory,

this is nothing more nor less than an action to recover property, and the fact that he seeks recovery of his property in a changed or substituted form, such as in the eyes of the law might make it still his property, does not in the least change the nature of the ground of recovery which he here invokes. Such change of form in the property has to do only with the description and identity thereof. As said by Justice Peckham, speaking for the New York Court of Appeals in *Holmes v. Gilman*, 138 N. Y. 369, 34 N. E. 205, 34 Am. St. 463, 20 L. R. A. 566:

" 'The right has its basis in the right of property, and the court proceeds on the principle that the title has not been affected by the change made of the trust funds, and the *cestui que trust* has his option to claim the property and its increased value as representing his original fund. The right to follow and appropriate ceases only when the means of ascertainment fail. It is a question of title,'

and as even more tersely stated by Chief Justice Alvey, speaking for the court of Appeals of Maryland in *Englar v. Offutt*, 70 Md. 78, 16 Atl. 497, 14 Am. St. 332:

" 'The true owner of a fund traced to the possession of another has a right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him.'

"Justice Shelby, speaking for the Fifth Federal Circuit Court of Appeals in *Butler v. Western German Bank*, 159 Fed. 116, recognized this underlying principle in observing that:

" 'The equity, springing as it does from the right to trace the funds or property, does not extend to a right to take other funds or property by way of damages or interest.'

"In 1 Bolles, Modern Law of Banking, p. 190, that learned author pointedly reminds us of that which becomes apparent to any one upon an examination of the numerous decisions touching this question that:

" 'Many a beneficiary has been unable to recover, not through his failure to prove the existence of a trust, but of a fund that he could rightfully claim as his own.'

"These observations, it may be thought, are unnecessary here because of their elementary character and the well understood theory of a claimant's right of recovery of the na-

ture here sought by Rugger. We deem it appropriate, how-ever, to emphasize this principle to the end that the ingenious argument of counsel may not lead us astray in the determination of the real question here involved, which, in its final analysis, is little else than a question of fact, though the case is submitted to us upon detail facts which are not in dispute. That is, the question of whether or not there came into the hands of the receiver Rugger's money or its substitute." *Rugger v. Hammond, ante* p. 85, 163 Pac. 408.

In the second case, the fund in controversy was the proceeds of certain fire insurance which remained on deposit with a bank, commingled with the funds of the insolvent depositor. Again stating the prevailing rule allowing a recovery of trust property which comes into the possession of the representative of the insolvent, the court said:

"The right of a beneficiary to reclaim a trust fund is based upon his right of property, not upon any right as a preferred creditor of the trustee. Hence, it was formerly held that the blending of trust money with that of the trustee defeated the owner's title and reduced his status to that of an unsecured creditor of the trustee. This on the theory that, having lost its identity, the trust money could not be followed and recovered *in specie.* The inequitable results of this doctrine finally led a great majority of the courts to adopt the rule that where money held by one person as trustee for another has been commingled with money of the trustee and deposited in a bank to the trustee's individual credit, the balance in the bank may be charged with the trust. This on the reasonable presumption that the trustee intends to use only what he has the right to use, and that whatever the trustee withdraws from the account is from his own part of the common fund and that the balance remaining includes the trust fund. *Board of Com'rs of Crawford County v. Strawn,* 157 Fed. 49, 15 L. R. A. (N. S.) 1100; *Waddell v. Waddell,* 36 Utah 435, 104 Pac. 743; *Widman v. Kellogg,* 22 N. D. 396, 133 N. W. 1020, 39 L. R. A. (N. S.) 563; *Lincoln Savings Bank & S. D. Co. v. Morrison,* 64 Neb. 822, 90 N. W. 905, 57 L. R. A. 885; *Smith v. Fuller,* 86 Ohio St. 57, 99 N. E. 214, Ann. Cas. 1913D 387; *Brennan v. Tillinghast,* 201 Fed. 609;

*Southern Cotton Oil Co. v. Elliotte,* 218 Fed. 567; *Hewitt v.
Hayes,* 205 Mass. 356, 91 N. E. 332, 137 Am. St. 448; *Spo-
kane County v. First Nat. Bank,* 68 Fed. 979." *Chase &
Baker Co. v. Olmsted,* 93.Wash. 306, 160 Pac. 952.

In the other cases cited, the question was not specifically
discussed. The rule was recognized, however, and the de-
cisions rested upon the principle involved.

The principle announced by the cases cited not only pre-
cludes recovery in any case on the first ground stated, but it
precludes recovery in the case before us on the second. It is
stipulated that the moneys received by the trustee from the
sale of the rugs was used "in payment of its employees, in
paying expenses, in paying other creditors, and in the gen-
eral operation of its business." A presumption is an infer-
ence, affirmative or disaffirmative, of the truth of a proposi-
tion of fact which is drawn by a process of reasoning from
some one or more matters of known fact. The presumption
arises from a want of knowledge of the truth of the proposi-
tion. It is in the nature of evidence, and if it be known
whether the given proposition is true or false, there can be
no presumption because the fact is established which the pre-
sumption tends to prove or disprove. Hence, in the present
case, there can be no presumption that the money received
from the sale of the rugs came into the possession of the as-
signees, and hence no recovery on the theory that the money
is the property or the proceeds of the property of the bene-
ficiary of the trust.

The third ground is likewise in contravention of the prin-
ciple on which the right of recovery rests. If the trust rela-
tion does not create a general lien on all of the property of
the trustee, there is no reason for saying that it creates a
lien on property of like kind, whether that property be money
or property of a different nature. This seems so self-evident
as not to require argument in its support. The proposition
was answered moreover by the case of *Chase & Baker Co. v.*

*Olmsted,* before cited. There the fund which the plaintiff sought to impress with the trust had been depleted, between the time his money was deposited in the fund and the time the action was instituted, to a sum less than the amount of trust money deposited, although sufficient money was in the deposit at the latter time to pay the entire claim, and it was held there could be a recovery only to the amount shown to have continuously remained in the account. The court, after the paragraph heretofore quoted, used this language:

"But as a resulting corollary it is still held that, if at any time during the currency of the blended account the withdrawals leave a balance less than the trust fund, that fund must be regarded as dissipated, except as to such balance. Sums subsequently added to the account from other sources cannot be attributed to the trust fund. *Crawford County v. Strawn, supra; Hewitt v. Hayes, supra.* Some courts have refused to recognize this corollary but they are few, and at least one of these has, in more recent decisions, receded from its former position. *Nonotuck Silk Co. v. Flanders,* 87 Wis. 237, 58 N. W. 383; *In re Plankinton Bank,* 87 Wis. 378, 58 N. W. 784; *Burnham v. Barth,* 89 Wis. 362, 62 N. W. 96. For a full statement of the foregoing principles substantially in the language of the leading cases see 3 R. C. L. § 180. As between other creditors and the *cestui que trust,* the burden of proving his title still rests upon the latter. *Schuyler v. Littlefield,* 232 U. S. 707. Aided by every presumption, he can only recover the lowest balance to which the blended account had been reduced pending its currency as shown by the bank's books. *Powell v. Missouri & A. Land & Min. Co.,* 99 Ark. 553, 139 S. W. 299."

Counsel have in their briefs cited numerous authorities from other jurisdictions. These present a decided conflict of opinion. We have not felt called upon to notice them specifically as we believe our own cases are determinative of the questions involved.

Our conclusion is that the court erred in the judgment entered. It is therefore reversed, and the cause is remanded

with instructions to enter a judgment to the effect that the plaintiffs take nothing by their action, with costs to the defendants.

MOUNT, WEBSTER, and HOLCOMB, JJ., concur.