[No. 22657. Department One. February 4, 1931.]

ELSIE DAVIS, *as Administratrix, Respondent,* v. NORTH COAST TRANSPORTATION COMPANY *et al.,* *Appellants.*[1]

[1]Reported in 295 Pac. 921.

*Barry & Morrison, Wilbur, Beckett, Howell & Oppenheimer, Bogle, Bogle & Gates,* and *Edward G. Dobrin,* for appellants.

*John Wilkinson* and *Senn & Recken,* for respondent.

MAIN, J.—This action was brought to recover damages for wrongful death. The widow, as executrix of the estate of the deceased, seeks recovery in her own behalf. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of twenty thousand dollars. Motion for judgment notwithstanding the verdict, or in the alternative for a new trial, being made and overruled, judgment was entered against the defendant The North Coast Transportation Company for the sum of fifteen thousand dollars, and against the defendant Occidental Indemnity Company, the insurer, for five thousand dollars. Both defendants appeal.

The facts are these: The accident which gave rise to the litigation occurred October 18, 1929, at about ten o'clock p. m., on the Pacific highway, four or five miles north of the city of Vancouver. The Pacific highway extends north and south, and is paved to a width of twenty feet. A few feet to the west of the pavement is a guard rail or fence, painted white; on the east side of the pavement, there is a dirt or gravel shoulder, twenty feet or more in width. The pavement, on the

night of the accident, was wet and slippery. Though it was not then raining, there had been a light rainfall a short time previous. Prior to the accident, Fay S. Davis was driving a White truck, referred to as a wrecker, and was towing another truck which had suffered a mishap earlier in the evening something like three miles further north. The front end of the disabled truck was lifted and carried on the rear part of the wrecker. The disabled truck weighed approximately ten thousand pounds, and, with the front end elevated, the weight was carried largely on the rear wheels. As the truck was being towed, the tire on the left rear wheel either went flat or the rim thereof came off. The wrecker and the truck that it was towing were then moved over very close to the guard rail on the west side of the roadway. A Buick automobile, driven by W. E. Hudson, was parked a few feet behind, and close to the guard rail. The left wheels of the wrecker, the truck, and the automobile extended over on to the pavement a distance of approximately five feet. The lights on the front of the wrecker and the automobile were dimmed, in order not to interfere with the vision of drivers of vehicles approaching from the south. The automobile had on its rear two red lights, and the driver thereof sat in the seat of the car and, by use of the pedal, threw these lights on and off, so as to warn traffic coming from the north. A man was sent to the south a distance of four or five hundred feet, with a red flash light, to warn traffic from that direction.

The grade of the highway at this point was about five per cent, rising to the south. Just prior to the accident, a bus, owned by the North Coast Transportation Company, and driven by one of its employees, came over the top of the hill four or five hundred feet to the south of the red light, which was then being

waved back and forth by the man who had been sent up the highway for that purpose. There was no other traffic on the road at the time. The bus struck the wrecker, and then struck Davis, who was working at the left wheel of the truck which was being towed, with the result that Davis sustained injuries from which he subsequently died. The bus, as it came over the hill, was traveling at approximately thirty-five miles an hour. One witness testified that it made no attempt to stop, and disregarded the red light warning which was being waved across the pavement. Other witnesses testified that, when the bus came over the hill, the driver applied the brakes, and, as he did so, the rear wheels would skid; he would then release the brakes, and the bus would straighten up; and he continued this until the collision occurred.

The first question is whether the driver of the bus was guilty of negligence, and little need be said upon this question. If he disregarded the red light, as one witness testified, clearly the jury had a right to find negligence. On the other hand, if he did not disregard it, and attempted to apply his brakes, with the result above indicated, there was a question for the jury as to whether he approached the downhill grade at that point at a speed too great, knowing the condition of the highway. The question of negligence was for the jury.

The next question is whether the deceased was guilty of contributory negligence as a matter of law, and this depends upon whether placing the wrecker, the rear wheels of the truck, and the Buick automobile on the west side of the highway, with the left wheels extending five feet over on to the pavement, was a violation of the statutory law of this state. Section 6347, Rem. 1927 Sup., provides that it shall be unlawful for any person to leave any vehicle standing upon the

main traveled portion of any highway of this state outside of any incorporated city or town, but that this provision "shall not apply to any vehicle so disabled as to prohibit the moving of the same. . . ." Section 6362-47 provides that no person shall park, or leave standing, any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any public highway ". . . when it is practicable to park or leave such vehicle standing off of the road or improved or main traveled portion of such highway . . ." It is said that, under these statutory provisions, it was negligence to not remove the vehicles to a point where all the wheels thereof would clear the pavement.

Whether it was practicable to move the disabled truck further after the trouble with the left wheel, was a question of fact. The statutory provisions referred to must be given a reasonable construction. In considering a similar statute, in the case of *Mitsuda v. Isbell,* 71 Cal. App. 221, 234 Pac. 928, it was said:

"The language of the above provision is very general, but, in its application, it must be given a construction conformable to reason and common sense. If the language of the section were to be accepted without qualification, there would be no limit of time during which the highways of the state might be used for the purpose of repairing a vehicle getting out of order while being driven over such highways. What the section evidently means, or was intended to mean, is that where some essential part of the mechanical contrivances of a vehicle, while being driven over a highway, gets so out of repair as to render it incapable of performing its work, with the result that such vehicle cannot be moved by the usual method of moving it, then, if it be practicable to remedy the difficulty within a reasonable time, the vehicle may be allowed to stand on the highway until the defect or injury is corrected."

In what we have said on this question, it has been assumed, without so deciding, that the driver of the bus was one of the class for whose protection the statutes were enacted. It must be remembered that the vehicles parked were on the west side of the pavement, extending over about five feet. The pavement was twenty feet wide. This left fifteen feet, upon which the bus approaching from the south could have passed. There was, also, the dirt shoulder to the east, above mentioned. In addition to this, care was used to warn traffic coming from both directions by the use of red lights. Under the facts of this case, it cannot be held, as matter of law, that the deceased was guilty of contributory negligence in attempting to repair the disabled left wheel of the truck being towed, while it extended over on to the pavement the distance mentioned.

The next question is whether the incidental language in two or three instructions, which was to the effect that contributory negligence, in order to defeat a recovery, must have been the proximate cause of the injury complained of, constituted reversible error. In other instructions, the rule is correctly stated to the effect that, if the negligence of the deceased proximately and naturally contributed in a material degree to the injury, then it would bar recovery. One of the instructions complained of was number three, which covers about three-fourths of a page of the transcript. The exception to this instruction was as follows:

"Defendants except to instruction number three for the reason that the same is not a statement of the law applicable to the case and not justified or warranted by the facts and the evidence."

This exception in no way called the court's attention to the fact that, in the instruction, there was an

incorrect statement of the law, in that it was said that contributory negligence, in order to defeat a recovery, must have been the proximate cause of the injury. In *Kelley v. Cohen,* 152 Wash. 1, 277 Pac. 74, it was held that an exception to an instruction in this language, "Defendant excepts to instruction No. 5, upon the ground and for the reason that the same is not a correct statement of the law, and not based upon the evidence in this case," was too general, and was not a compliance with the rule requiring exceptions to be sufficiently specific to apprise "the judge of the points of law or questions of fact in dispute." It was there said:

"Defendant's exceptions are entirely general in their nature, and do not, in any way, specifically point out to the court the matters concerning which complaint is now made. None of the exceptions taken to any of the instructions given sufficiently comply with Rule VI to permit this court to review the error claimed. Appellant's claim of error as to these instructions is highly technical, and such objections must, under the above quoted rule, be specifically pointed out to the trial court."

The exceptions in that case were no more general than are the exceptions in the case now before us. In the recent case of *State v. Powell,* 159 Wash. 285, 293 Pac. 280, the situation was different. There, intent was an element of the crime for which the defendant was being tried, and the court gave no instruction thereon. The defendant requested an instruction which contained but one sentence of about five lines, which correctly stated the law. It was there said:

"The court must know what instructions he has given, and when his attention is called to a particular instruction covering one simple point, it would seem to be the duty of the court to determine whether or

not the instructions as given sufficiently covered that point."

In the case now before us, each of the instructions to which exception was taken contained more than one proposition, and two of them contained a number of different statements or propositions. As already said, the exceptions to none of the instructions pointed out the specific point therein of which the appellants complain. Even though the exceptions were not sufficient, it may be said that, after considering the instructions complained of, as well as the instructions given which correctly state the law upon the matter of the degree of contributory negligence necessary to defeat a recovery, we are of the opinion that the instructions were not so far confusing as to have been misleading to the jury under the facts of this case. It could almost be said that here there was no contributory negligence as a matter of law.

The next question is whether the court erred in submitting to the jury, as an element of damages for which recovery could be had, the loss of "the society, protection and companionship of her deceased husband."

Section 183-1, Rem. Comp. Stat., provides that,

"Every such action [for wrongful death] shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. . . . In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just."

Construing this statute, in *Walker v. McNeill*, 17 Wash. 582, 50 Pac. 518, it was held that the measure of damages for the death of the husband and father through the wrongful act or neglect of another, should include not alone the pecuniary value of his wage-earning abilities, but also the value of his daily serv-

ices, attention and care bestowed on his family. It was there said:

"The most serious question for consideration is the amount of damages assessed by the jury; and under this phase of the case the motion of appellant to strike from the complaint will be considered without specially further referring to it. Sec. 138, 2 Hill's Code, states the rule for damages for death caused by the wrongful act or neglect of another as follows:

" 'In every such action the jury may give such damages, pecuniary or exemplary, as under all circumstances of the case may to them seem just.'

"This is a very liberal rule, and while the damages must be pecuniary in this case, they do not exclude a consideration of the social and domestic relations of the parties or their kindly demeanor towards each other. They are a part of all the circumstances of the case. *Beeson v. Green Mt. G. M. Co.*, 57 Cal. 20.

"But damages by way of solace to the affections of a wife or children cannot be allowed. Tiffany on Death by Wrongful Act, § 160, observes:

" 'It seems that the pecuniary value of the support of the head of a family cannot be limited to the amount of his wages earned for the benefit of his family, but that his daily services, attention, and care on their behalf may be considered.' "

The cases of *Rochester v. Seattle Renton & Southern R. Co.*, 75 Wash. 559, 135 Pac. 209, and *Aronson v. Everett*, 136 Wash. 312, 239 Pac. 1011, are to the same effect.

The appellants cite cases holding that, under the Federal Employers' Liability Act, the loss of society and companionship cannot be taken into consideration in determining the damages, but that act contains no provision such as found in § 183-1, *supra*, to the effect that, in every such action, the jury may give such damages as "under all the circumstances of the case may to them seem just." There was no error in the instruction relative to the elements of damage,

because it was in accord with the prior holdings of this court.

The next question is whether the trial court erred in the admission or rejection of testimony, and we do not deem it necessary to extend the discussion on this question. We have considered the objections to the testimony offered, as well as that rejected, and are of the opinion that they are without substantial merit.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.

[1]Reported in 295 Pac. 939.