[No. 31867. *En Banc.* January 9, 1953.]

RUBY E. HUTTON, as *Administratrix, Respondent and Cross-appellant,* v. DAVID L. MARTIN, *Appellant,* THE CITY OF GRANDVIEW, *Respondent.*[1]

[1]Reported in 252 P. (2d) 581.

*Tonkoff & Holst,* for appellant.

*S. E. Chaffee* and *Kenneth C. Hawkins,* for respondent and cross-appellant Hutton.

*Gavin, Robinson & Kendrick,* for respondent the City of Grandview.

DONWORTH, J.—Plaintiff, as administratrix of the estate of her husband, James T. Hutton, deceased, brought this action for wrongful death against the city of Grandview and its employee, David L. Martin, the driver of its garbage truck, which collided with the deceased's automobile.

The accident occurred on October 14, 1949, near the crest of Judd Hill on a county highway south of Grandview. Defendant Martin had dumped a load of the city's garbage and was returning to the city in a northerly direction. The deceased was driving in a southerly direction. The road was hard surfaced, but did not have a yellow center line. Near the crest of Judd Hill, there was a bridge, with wooden railings, over an irrigation ditch, which crossed under the highway diagonally so that the railing on the east was offset and northerly to the railing on the west side of the highway.

There were no eyewitnesses to the accident except defendant Martin. There was testimony produced by defendants that the deceased had consumed some beer in a local tavern about three hours previously, and that, as he drove up the hill, he was driving over on defendant Martin's side of the highway. Defendant Martin testified that he pulled to the right as far as possible and scraped the wooden railing on the east side of the highway with the bed of his truck. The deceased, nevertheless, struck the left front of the truck three feet over on defendant Martin's side of the highway, and shortly thereafter died.

Plaintiff showed, on the contrary, that defendant Martin, prior to going over the crest of the hill, had been driving rapidly and in the middle of the highway. At the scene of the collision, near the crest of the hill, fresh gouge marks were detected west of the center of the highway (upon the deceased's side of the highway) with intermittent scratches extending therefrom in a widening arc over to the point where the deceased's vehicle stopped after the accident. A tire was missing from the front left rim of the deceased's car when it stopped. Pictorial evidence was introduced supporting the plaintiff's contention that the deceased had been on his own side of the highway.

The factual question to be determined by the jury was which, if either, vehicle was on its own side of the highway.

The jury returned a verdict for the plaintiff against both defendants. The trial court granted a judgment n.o.v. for the city. Defendant Martin appeals from the judgment against him, and plaintiff cross-appeals from a dismissal of the city on the judgment n.o.v.

We first give consideration to respondent's cross-appeal from that portion of the judgment dismissing the action as to the city of Grandview.

The trial court's granting of the city's motion for judgment n.o.v. was based on *Krings v. Bremerton,* 22 Wn. (2d) 220, 155 P. (2d) 493, which fully sustains the court's action. Respondent urges us to re-examine the doctrine of that case and to overrule it.

At least since 1909, all classes of municipalities have had legislative authority to engage in the business of operating certain public utilities. See Rem. Rev. Stat., § 9488 *et seq.* (*cf.* RCW 80.40.010). As last amended in 1947 (Rem. Supp. 1947, § 9488), this section enumerated the following public utilities which a municipal corporation may operate:

1. Waterworks "with full power to regulate and control the use, distribution and price" of water.

2. Sewerage systems and systems and plants for garbage and refuse collection and disposal "with full jurisdiction and authority to manage, regulate, operate and control the same,

and to fix the price of service thereof, within and without the limits of the corporation."

3. Plants and facilities for the manufacture and sale of stone or asphalt products or compositions or other materials which may be used in street construction or maintenance with power to fix the price thereof.

4. Public markets and cold storage plants for the sale and preservation of certain perishable foods.

5. Works, plants, and facilities for furnishing gas, electricity, and other means of power "with full authority to regulate and control the use, distribution and price thereof."

6. Cable, electric and other railways, automobiles, motor busses, and auto trucks for the transportation of freight and passengers within the corporate limits with power to fix, alter, regulate, and control the fares and rates to be charged for such service.

Of these public utilities authorized by § 9488, the only one that has been held by this court to be a governmental function in the operation of which municipalities are not liable for torts is the collection and disposal of garbage and refuse (*Krings v. Bremerton, supra*).

There is no immunity from tort liability when a city operates: waterworks—*Russell v. Grandview,* 39 Wn. (2d) 551, 236 P. (2d) 1061; sewer systems—*Hayes v. Vancouver,* 61 Wash. 536, 112 Pac. 498; electric plants—*Abrams v. Seattle,* 60 Wash. 356, 111 Pac. 168; street railways—*Koch v. Seattle,* 113 Wash. 583, 194 Pac. 572.

The only decision of this court cited in the *Krings* case, *supra,* as supporting the holding that there is no tort liability in the operation of a municipal garbage collection system is *Hagerman v. Seattle,* 189 Wash. 694, 66 P. (2d) 1152, 110 A. L. R. 1110, which involved a truck operated by the city health department in connection with hospital service. The two cases are plainly distinguishable, since in the former the city was operating a public utility whereas in the latter the city was carrying on a health function, which has generally been held to be a governmental function. The *Krings* case contains no discussion of the distinction between govern-

mental and proprietary functions of a municipality and states no reason for the holding other than it is "in accordance with the weight of authority."

In *Seattle ex rel. Dunbar v. Dutton,* 147 Wash. 224, 265 Pac. 729, we declined to extend the doctrine of nonliability beyond the true import of our prior decisions and quoted approvingly the applicable language in *Riddoch v. State,* 68 Wash. 329, 123 Pac. 450, as follows:

"Municipal corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to, them *solely for their own benefit in their corporate capacity, whether performed for gain or not,* and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. *They have no sovereignty of their own,* they are in no sense sovereign *per se.* Their immunity, like their sovereignty, is in a sense borrowed, and the one is commensurate with the other. Such is, in effect, the conclusion reached in *Hill v. Boston,* 122 Mass. 344, 23 Am. Rep. 332, after a most exhaustive review of the authorities, both American and English. The same principle underlies our own decisions. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Russell v. Tacoma,* 8 Wash. 156, 35 Pac. 605, 40 Am. St. 895; *Cunningham v. Seattle,* 42 Wash. 134, 84 Pac. 641; *Linne v. Bredes,* 43 Wash. 540, 86 Pac. 858, 117 Am. St. 1068, 6 L. R. A. (N.S.) 707." (Italics ours.)

In the case at bar, the city of Grandview was charging for the service it rendered (as authorized by § 9488) and was in business at least for the purpose of defraying the cost of the service rendered. Whether the city actually made a profit when viewed from the standpoint of proper accounting practice, is immaterial. It was operating a public utility under statutory authority and should be held liable for its torts. Since the legislature provided no immunity when it authorized the operation of municipal utilities, the court should find no implied immunity from tort liability. This court should apply to Grandview's garbage operations the

same rule which was applied to the operation of its water system in the recent case of *Russell v. Grandview,* 39 Wn. (2d) 551, 236 P. (2d) 1061. What we said in that case is applicable here:

"The city urges nonliability on its part upon the theory that in the operation of its water system it was performing a governmental function. The law in this state is to the contrary. *Bjork v. Tacoma,* 76 Wash. 225, 135 Pac. 1005; *Aronson v. Everett,* 136 Wash. 312, 239 Pac. 1011; *Shandrow v. Tacoma,* 188 Wash. 389, 62 P. (2d) 1090. We decided in those cases that a city engaged in such an activity acts in its proprietary capacity and is liable for negligence the same as any private corporation engaged in the same business. Cities are limited governmental arms of the state, and when permitted by the state to engage in activities normally performed by private enterprise, they, to that extent, depart from their governmental functions. The fact that some of the water is used in fire protection and in connection with health and sanitation is not material. The negligence of which complaint was made did not arise in the performance of such functions."

The doctrine of *stare decisis* should not be applied in this case where to do so would perpetuate error. No property rights would be affected by overruling the only prior decision of this court on this subject (*Krings v. Bremerton, supra*), and our decisions on the subject of the tort liability of municipal corporations in the operation of public utilities would then become uniform.

In *In re Yand's Estate,* 23 Wn. (2d) 831, 162 P. (2d) 434, we quoted from a decision of the highest court of the state of New York concerning *stare decisis* as follows:

" 'But the doctrine of *stare decisis,* like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason. The authorities are abundant to show that in such cases it is the duty of courts to re-examine the question. Chancellor Kent, commenting upon the rule of *stare decisis,* said that more than a thousand cases could then be pointed out, in the English and American reports, which had been overruled, doubted or limited in their application. He added that "it is probable that the rec-

ords of many of the courts of this country are replete with hasty and crude decisions; and in such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." ' *Rumsey v. New York & N. E. R. Co.,* 133 N. Y. 79, 30 N. E. 654, 28 Am. St. 600."

For these reasons, we are of the opinion that garbage disposal is a proprietary function and hereby overrule *Krings v. Bremerton, supra.* The judgment is reversed upon respondent's cross-appeal, with directions to deny the city's motion for judgment n.o.v.

On his appeal, the appellant Martin contends that the court erred in giving instructions Nos. 9 and 10 to the jury. He concedes that they are a correct statement of the law, but argues that instruction No. 9, because it singles out and names the appellant in defining his duties to stay on the right side of the highway, has, by emphasis, prejudiced him before the jury. It is not necessary that each instruction contain a complete exposition of the law applying to the point in controversy. *Herndon v. Seattle,* 11 Wn. (2d) 88, 118 P. (2d) 421. Such emphasis as may exist in instruction No. 9 is balanced by naming the deceased in relation to the same duty in instructions Nos. 23 and 24.

We find no merit in the assignment as to instruction No. 9.

Appellant further contends that instruction No. 10 is erroneous in that it dealt with the operation of the garbage truck on the left of the center of the highway without referring to the time and place of the accident, and further that it did not require the jury to find that such negligence was also the proximate cause of the injury.

Again we say that all the law need not be in one instruction, and that these matters are fully covered in other instructions, particularly Nos. 5, 16, 19, and 20.

The giving of instruction No. 10 was not error.

Appellant assigns as error the giving of instruction No. 12, which reads as follows:

"You are instructed that when a person is injured and dies as a result of a collision, a presumption arises that the per-

son killed was at the time exercising due care and that he did all that the situation then and there presented to him required him to do to save himself from injury, when there is no credible evidence to the contrary."

This, of course, was directed to the issue of contributory negligence on the part of the deceased.

This assignment of error raises a very important legal question which has been considered in our previous decisions, that is, whether this presumption should go to the jury.

In *Morris v. Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 1 Wn. (2d) 587, 97 P. (2d) 119, after discussing the applicable cases, it was held, among other things, that the presumption should go to the jury together with all the testimony and exhibits properly admitted in evidence, when the only testimony in opposition to the presumption was that of interested witnesses.

In that case, we set forth three rules governing the operation of the so-called presumption of due care, as follows:

"(1) This presumption is not evidence, but will serve in the place of evidence until *prima facie* evidence has been introduced by the opposite party.

"(2) This presumption entirely disappears from the case upon the introduction of competent and material testimony of disinterested witnesses, as to the actions of the deceased immediately prior to and continuing up to the time of the accident; and where such testimony is introduced, the presumption should in no event be submitted to the jury. However, even though there be the testimony of disinterested witnesses, such testimony and all the other competent and material evidence must be submitted to the jury, unless the court can say that the essential and controlling facts necessary to establish the contributory negligence of deceased are undisputed, and that the only reasonable inference which can be drawn therefrom is that deceased failed to exercise that degree of care required of him, under the conditions existing at the time and place of the accident.

"(3) Where the only testimony introduced in opposition to the presumption is that of interested witnesses, or where there is no testimony as to the actions of the deceased immediately prior to and at the time of the accident, the presumption must go to the jury, together with all the testimony and exhibits properly introduced in the case, unless

from all the evidence the court can say that the contributory negligence of the person killed was so evident that reasonable minds could not differ thereon."

We, in effect, overruled our decision in *Karp v. Herder,* 181 Wash. 583, 44 P. (2d) 808, where it was held (with four judges dissenting) that in an intersection case it was proper to instruct the jury as follows:

"The law presumes that at the time and place in question, and at this intersection, the deceased did yield the right of way to the defendant. This, however, is merely a presumption and may be overcome by the evidence in this case to the contrary, if there is such evidence, but it continues as a presumption until it has been overcome by the evidence in the case."

In that case, there was testimony of disinterested witnesses that the deceased driver did not yield the right of way.

See, also, the following later cases which discuss the presumption of due care: *Erickson v. Barnes,* 6 Wn. (2d) 251, 107 P. (2d) 348; *Sweazey v. Valley Transport,* 6 Wn. (2d) 324, 107 P. (2d) 567, 111 P. (2d) 1010, 140 A. L. R. 1; *Richardson v. Pacific Power & Light Co.,* 11 Wn. (2d) 288, 118 P. (2d) 985; *Allen v. Porter,* 19 Wn. (2d) 503, 143 P. (2d) 328; *McCoy v. Courtney,* 25 Wn. (2d) 956, 172 P. (2d) 596, 170 A. L. R. 603; *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564; *Overton v. Wenatchee Beebe Orchard Co.,* 28 Wn. (2d) 377, 183 P. (2d) 473, 173 A. L. R. 616; *Allen v. Hart,* 32 Wn. (2d) 173, 201 P. (2d) 145; *Heber v. Puget Sound Power & Light Co.,* 34 Wn. (2d) 231, 208 P. (2d) 886.

We have read numerous cases and texts bearing on the subject of the office of presumptions in a lawsuit in general and of the propriety of instructing the jury regarding this particular presumption of the exercise of due care on the part of a deceased person. Our research has convinced us that the subject is in a state of considerable confusion, to which we have no desire to add.

The most practical suggestion for dealing with the problem which we have found is contained in an article by Dean

Judson F. Falknor published in 15 Wash. L. Rev. 71, entitled "Notes on Presumptions."

Dean Falknor's comment is in part as follows:

"But where the burden of persuasion on the issue of contributory negligence has been cast upon the defendant (as it is in this jurisdiction), plaintiff's action 'may go forward in the first instance' without the necessity of any evidence in plaintiff's behalf on the issue. Consequently, there is no necessity for the use of a presumption. The language from the *Morris* case just quoted would be exceedingly apt in a jurisdiction (and there are some) where the plaintiff has the burden of persuasion on the issue of contributory negligence, *i.e.*, where he is required as a part of his own case to show the exercise of due care. The logic of the situation makes it a good guess that the presumption of due care had its origin in jurisdictions where the burden of proof is upon the plaintiff. All of which makes it appropriate to suggest again that the 'presumption of due care,' operating as it does against rather than in favor of the party upon whom rests the burden of persuasion, is anomalous in a jurisdiction such as this, that it is not a genuine presumption, and that the difficulty, if not the confusion, which has resulted in attempting to apply to this 'presumption' a body of doctrine rationally applicable to genuine presumptions only, persuasively argues that it might well be forgotten, at least in instructions. to juries. There is authority for this view.

". . . There is very little, if anything, in the Washington cases which can be helpful in the framing of such instructions. A variety of solutions have been attempted in other jurisdictions and suggested by the commentators. The point is again that the difficulty of the problem, apparently inevitable in respect to genuine presumptions, cogently suggests the inadvisability of stating to the jury an anomalous presumption.

"The suggestion is that contributory negligence in a wrongful death action may and should be disposed of by both court and jury in terms of burden of proof alone, without invoking a 'presumption of due care.' A finding of contributory negligence as a matter of law presumably will not be made where the supporting evidence comes from interested witnesses only. This is not because of a 'presumption of due care', but because the evidence does not attain that conclusive character required to justify the intervention of the court. Thus the 'interested witness' notion would not

yield anything in the suggested procedure. If the issue goes to the jury, it need only be instructed that the burden of establishing contributory negligence by a fair preponderance of the evidence rests upon the defendant, and this instruction, together with the usual advice that the jurors are the 'sole and exclusive judges of the evidence and of the credibility of the several witnesses and of the weight to be attached to the testimony of each', would seem to meet the necessities of the situation."

■ Dean Falknor's article seems to us to provide a practical and logical solution to the problem. As applied to the case at bar, it has the effect of disregarding the presumption entirely because appellant had the burden of proof (*i.e.,* both the duty of producing evidence that the deceased was guilty of contributory negligence and the burden of convincing the jury thereof by a preponderance of the evidence). With an instruction that contributory negligence is never presumed (which was given in this case), there is no need to resort to a presumption that the deceased was exercising due care at the time of the accident. The rule that no person is presumed to have been negligent until the party having the burden of proof establishes that fact by a preponderance of the evidence furnishes adequate protection to a deceased person as well as to a living person.

The giving of instruction No. 12 gave respondent the advantage of two presumptions; and, since the vital issue submitted to the jury by the court's instructions was which vehicle was on its left side of the highway immediately prior to the collision, it necessarily influenced the jury in her favor.

■ Under our decision in the *Morris* case, the trial court was justified in giving instruction No. 12, but, in view of the conclusion we have reached in this case, we find it necessary to overrule the *Morris* case in so far as it is inconsistent with the views expressed herein. It follows that the giving of instruction No. 12 was prejudicial error, and appellants are entitled to a new trial for that reason.

The judgment is reversed on respondent's cross-appeal, with directions to deny the motion of the city of Grandview

for judgment notwithstanding the verdict and to grant the city a new trial. Upon the appeal of appellant Martin, the judgment is reversed, with directions to grant him a new trial.

SCHWELLENBACH, C. J., MALLERY, HILL, HAMLEY, FINLEY, WEAVER, and OLSON, JJ., concur.

GRADY, J. (dissenting)—I am not in accord with the majority opinion. The judgment should be affirmed in its entirety.

I do not think we should overrule *Krings v. Bremerton,* 22 Wn. (2d) 220, 155 P. (2d) 493, in which we decided that in operating a garbage collection and disposal system the city of Bremerton was exercising a governmental function. We followed the principle set forth in *Hagerman v. Seattle,* 189 Wash. 694, 66 P. (2d) 1152, 110 A. L. R. 1110, to the effect that an activity of a city facilitating an expeditious administration of health service was a governmental function. In the latter case, we recognized that the reasons which had prompted the courts to invoke the doctrine of immunity in favor of municipal corporations when acting in a governmental capacity had been subjected to vigorous attack by writers of monographs and by comments appearing in legal periodicals, but declined to depart from the doctrine, which we considered had become so fixed as a matter of public policy that any change therein should be sought from the legislature. I am aware of no change in social or economic conditions demanding a departure by the court from a doctrine we have so thoroughly considered. I think we should adhere to the view expressed in the *Hagerman* case that, if there is to be a departure, it should come from the legislature.

I am in accord with the view that the presumption of due care on the part of the deceased may be met and overcome by the testimony of interested as well as disinterested witnesses, and that we should not follow the contrary view expressed in *Morris v. Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 1 Wn. (2d) 587, 97 P. (2d) 119. However, I am not will-

ing to accept the view that the presumption is not in any case to be considered by the jury. If the presumption is to be indulged in by the court when ruling upon a motion for a nonsuit or on a motion for a directed verdict, then it seems to me that the jury should likewise be entitled to make use of it in determining whether due care was exercised, as well as whether it has been met and overcome by evidence which the jury deems credible. There may be cases where, by reason of the existence of physical facts or the proof is so clear and convincing that reasonable minds may not differ, the court should hold as a matter of law the presumption has been met and overcome, but ordinarily the presumption should be considered along with all of the evidence in the case. I realize this view is contrary to much that has been said with reference to when a presumption has served its purpose, that it is not evidence of a fact but purely a conclusion and should never be placed in the scale to be weighed as evidence; but such view is the result of my study and observance of the practical operation of the presumption.

We had occasion to consider the presumption of agency in those cases where an automobile belonging to one person was being driven by another in *McGinn v. Kimmel*, 36 Wn. (2d) 786, 221 P. (2d) 467. We decided on the authority of our cases that the presumption might be overcome by the testimony of interested as well as disinterested witnesses. We further stated that, if a presumption of fact and an inference were treated on the same basis with reference to how they might be met and overcome, much confusion would be clarified. In *Carlson v. Wolski*, 20 Wn. (2d) 323, 147 P. (2d) 291, we had under consideration the presumption of agency rule. We stated that the presumption or inference of fact arising from proof of ownership of an automobile may be overcome by the testimony of either interested or disinterested witnesses, but the testimony must be uncontradicted, unimpeached, clear, and convincing. We also stated that, if the testimony was of such character and was not met by controverting evidence, the case might be determined upon a motion for a directed verdict. We then said:

"If, on the other hand, the trial court should be of the opinion that, whatever may be the value of defendant's evidence, it has not attained the degree and character required for the purpose of a directed verdict, the case should be submitted to the jury, to be decided by it on all the evidence then before the court."

I find myself unable to reconcile the foregoing thoughts with the idea that the presumption is out of the case just as soon as there is any testimony to the contrary. One might gather from reading the cases that, although the presumption of due care disappears when some one testifies to the contrary, nevertheless the jury may still consider the issue of due care, and if the jurors do not believe the contrary testimony a verdict may be rendered for the plaintiff. It seems to me that it would be much more satisfactory to say that the jury should be informed about the presumption just the same as it is about the presumption of innocence in a criminal case and then be allowed to determine whether the evidence to the contrary was sufficient to meet and overcome it. I find myself unable to escape the thought that a deceased person is entitled to have the presumption of due care accompany him and be considered in his favor the same as a defendant is entitled to have the presumption of innocence accompany him all through the trial and into the jury room.

The whole subject of presumptions, their application and their purpose and effect, is in a state of confusion, and the more they have been considered the greater is such confusion. Presumptions usually arise out of necessity, and, if allowed to take a natural and practical course, without refinement of attempted definition, can serve a useful purpose. My views are out of step with the minds of those scholars who have done so much theorizing and whose language the courts have copied, but I have taken this opportunity in this dissent to give them brief expression. A sample of what I have in mind is the expression of a scholar who said that presumptions "may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." However, I get some comfort from the words

of Judge Fullerton and the fair implications therefrom in *Heidelbach v. Campbell*, 95 Wash. 661, 164 Pac. 247:

"A presumption is an inference, affirmative or disaffirmative, of the truth of a proposition of fact which is drawn by a process of reasoning from some one or more matters of known fact. The presumption arises from a want of knowledge of the truth of the proposition. It is in the nature of evidence, and if it be known whether the given proposition is true or false, there can be no presumption because the fact is established which the presumption tends to prove or disprove."

I think the instruction given by the trial court on the subject of due care and quoted in the majority opinion was correct.

